## GOODRICH & DE FOREST *against* GORDON.(a)

The ransom of a vessel and cargo captured by an enemy is a lawful contract, and an action may be maintained in our courts, to recover the money agreed to be paid to the captor on such ransom.

Nor is it unlawful after the capture, to receive a passport from the captor, to protect the vessel from another capture.

Where a person, by writing, authorizes another to draw a bill of exchange, and stipulates to honour the bill, and a bill is afterwards drawn, and taken by a third party, on the faith of the written engagement, this is tantamount to an acceptance of the bill.

THIS was an action of *assumpsit*, to recover the amount of a bill of exchange drawn by *William Napier* upon the defendant, in favour of *James Stewart*, and by him endorsed to the plaintiffs. The cause was tried before his Honour, the Chief Justice, at the *New-York* Sittings, in *April*, 1816.

The defendant, jointly with certain other persons, was owner of the sloop *Hope*, and cargo, which, in *December*, 1813, was sent on a voyage from *New-York* to *Savannah*, and the following letter of instructions, dated *December* 6th, 1813, was delivered by the plaintiff to *Napier*, the master of the sloop.

" Sir, The sloop *Hope*, now under your command, being ready for sea, you will proceed to the *Hook*, and if no cruizers are off, you will take advantage of the first good opportunity, and proceed to sea, and make every despatch

(a) This cause was decided in *January* Term, 1817.

for *Savannah.* I would recommend you to get a good offing, say without the gulf stream; then keep southwardly, until you get *St. Catharine's* to bear west; then make the best of your way into port. Should you touch at the southward of *Savannah,* you will be able to get information, and, if necessary, you can take an inland passage. Your vessel is addressed to my brother, *George Gordon,* under whose instructions you will place the vessel after your arrival. Should you unfortunately fall in with, and be captured by, an *English* cruiser, you will endeavour to ransom the vessel and cargo, as low as possible, say not to exceed two thousand dollars ; your draft on me, or my brother, will be duly honoured, or should they take you to *Tybee,* you can go ashore, and bring off the specie. I, however, trust you will be more fortunate ; but, should it so happen, it will be fulfilled, in good faith. Wishing you a prosperous voyage, I am, &c. *Chas. W. Gordon.*"

On her voyage, the sloop was captured by the *British* frigate *Endymion,* and was ransomed by the master, for the sum of 2,000 dollars, for which amount he drew the following bill on the defendant.

" $2,000

H. B. M. Ship *Endymion,*
At sea, *December* 21st, 1813.

Sir,

Ten days after sight of this my second of exchange, first, third, and fourth, of the same tenor and date, not paid, please to pay to *James Stewart,* Esq. or order, on behalf of the officers and crew of his *Britannick* Majesty's ship *Endymion,* the sum of two thousand hard *Spanish* dollars, in specie, being the amount for which I have ransomed the sloop *Hope,* and cargo, (this day captured by the said ship,) agreeably to your letter of the 6th instant, and for which I have received the passport of the captain. To be honoured, with or without further advice.

Your obedient humble servant,

*Wm. Napier,* Master of the sloop *Hope.*
**Mr.** *Charles W. Gordon,* Merchant, *New-York.*"

ALBANY,
January, 1818.

GOODRICH
V.
GORDON.

*Napier*, at the same time, delivered his letter of instructions to *Stewart*, and received a passport, as mentioned in the bill. A number of *American* prisoners were also put on board the sloop, with a quantity of provisions for their support, and she was furnished with a new main-sail and fore-sail, or jib. During the voyage, the prisoners compelled the master to put into *Charleston*, where the sloop arrived, and the cargo was unladen, and came into the hands of the consignee. The bill and letter of instructions were received by the plaintiffs, and the amount, on the faith of the letter, was credited to the remitter, with whom the plaintiffs had had previous dealings, but whether this was *Stewart* or some other person, did not clearly appear. The defendant had received from the other part owners of the vessel, 1,000 dollars, as their proportion of the ransom money.

A verdict was found for the plaintiffs, subject to the opinion of the court, on a case containing the facts above stated.

*Ely*, for the plaintiffs, contended, 1. That the ransom was a valid contract, under the law of nations. (2 *Azuni*, 313. 2 *Emerig*. 464. ch. 12. s. 21. *Valin*, 138. art. 66. *Cornu* v. *Blackburne, Doug.* 641. *Yates* v. *Hall*, 1 *Term Rep.* 73.) Such contracts are highly beneficial in mitigating the evils of war. They ought to be fulfilled, on principles of common honesty, and for the honour of nations. *Si quid singuli, temporibus adducti, hosti promiserint, est in eo fides conservanda.* The courts of no nation have refused to give effect to them, unless prohibited by some statute or ordinance founded on principles of state policy. Thus, in *England*, by the statute of 22 *Geo.* III. ch. 25. contracts for the ransom of *British* ships were declared unlawful, because, possessing a great navy, such contracts diminished the chance of recaptures. But *France, Holland*, and other maritime powers, regard these contracts as binding under the law of nations. When the subject was brought before Congress, in 1813, they refused to pass a law prohibiting ransoms; thus leaving them, in this country, to be governed by the general law of nations.

If, then, the ransom was lawful, the passport mentioned in the bill, which was a necessary incident to it, cannot affect its validity. The act of Congress, (13 Cong. sess. 1. ch. 56.) *August* 2d, 1813, prohibiting the use of *British* licenses or passes, is to be taken only in reference to licenses to trade. It could never have been intended to apply to the case of a ransom.

2. There was a valid acceptance of the bill. The bill was for a valuable consideration, and the letter of instructions, which contained the engagement to accept a bill so drawn, was attached to the bill, and passed with it. In *M'Evers* v. *Mason*, (10 *Johns. Rep.* 215.) the court, after a review of the *English* authorities, inclined to the opinion, that where a third person gives credit on the faith of the promise to accept, it would be binding; and the principle of the decision in the case of *Weston* v. *Barker*, (12 *Johns. Rep.* 276.) is strongly in point. There B. accepted certain securities placed in his hands by A., who ordered B. to pay the balance to C. and it was held that C. might maintain an action against B. on his implied promise. In *M'Kim* v. *Smith & Steene*, in the county court of *Baltimore*, *Nicholson*, Ch. J. was clearly of opinion, that such a promise to accept a bill shown to a third person, who gave credit on the faith of it, was binding, and that it made no difference whether the credit was given *before* or *after* the bill was drawn. (1 *Hall's Law Journal*, 488.)

*Anthon*, contra. 1. A ransom is an illegal contract, at common law; and Lord *Kenyon*, in *Havelock* v. *Rockwood*, (8 *Term Rep.* 269–277.) considered the ransom acts as remedial laws. All trading with an enemy, during war, without the license of government, is unlawful. (*Potts* v. *Bell*, 8 *Term Rep.* 548.) Contracts of ransom have merely been tolerated by certain nations. They are clearly against the sound policy of all maritime powers, because they deprive their cruisers of the chance of recapture. Again; this contract is within the scope and meaning, if not within the letter of the act of Congress (13 Cong. sess 1. ch. 56.) prohibiting our citizens from using, directly or indirectly,

ALBANY,
January, 1818

GOODRICH
v.
GORDON.

a license, pass, or other instrument granted by the *British* government for the protection of any ship, &c.

2. Here was no valid acceptance of the bill. This question came up collaterally in the case of *M'Evers* v. *Mason*, and *Kent*, Ch. J. examined the authorities, but the court expressed no decided opinion. The arguments, however, of the learned counsel for the defendant, in that case, may be applied, with great force, to the present. The later decisions in *England* certainly go to establish the doctrine that a promise to accept a bill not drawn, or not yet in existence, does not amount to an acceptance.

Again; the master, in this case, exceeded his authority. He not only gave a bill for 2,000 dollars, but took on board prisoners, who, by their mutinous conduct, defeated the whole adventure. An agent who acts under special authority must strictly pursue that authority. If he varies from it, in any material degree, his act is void. (*Batty* v. *Caswell*, 2 *Johns. Rep.* 48.)

*Wells*, in reply. 1. *A ransom* is lawful. The law of nations, as well as the common law of *England*, sanctions such a contract. This is not a trading with an enemy. It is not like the case of *Potts* v. *Bell*, a voluntary contract. By the capture, all the rights of the owner were devested; and, to regain the whole, he consented to give a part. In case of a recapture, he would regain his property on paying *salvage*. It may be a question of policy, whether he will be allowed to be the *salvor* or not; and a particular government may deem it proper, from its own views of policy, in order to encourage its own cruizers, to prohibit ransoms; but until there is some statute or ordinance prohibiting them, there is nothing which renders the contract unlawful. The cases of *Havelock* v. *Rockwood*, and *Potts* v. *Bell*, are not applicable. They were decided on different grounds.

As to the objection, that the case is within the operation of the act of Congress, in regard to British licenses, it is manifest, that ransoms were not the evils which that statute was intended to prevent. It meant merely to superadd a penalty to acts already unlawful. Besides, the bill was given for the ransom, not for the passport, which was a subse

quent act. But the proviso, in the second section of the act of Congress, allowing the acceptance and use of a passport from the enemy, for the purpose of carrying *American* prisoners to the *United States*, would be sufficient to save this case from the operation of the act.

2. The question, as to an acceptance of a bill not drawn, was discussed in *M'Evers* v. *Mason ;* but this is not the case of a principal writing to his agent, and promising to accept bills drawn on him. It is, in substance, a letter of credit, or an authority to enter into a contract, according to the letter of instructions. The promise was as valid *before*, as *after* the bill was drawn ; this was admitted in the case of *Johnson* v. *Collins.* (1 *East*, 98.)

Again ; the consignee, the authorized agent of the defendant, received the property ransomed, and disposed of it, for the benefit of the defendant ; and two of the joint owners have paid to the defendant their proportion of the ransom. This amounts to a virtual acceptance of the bill. The master did not exceed his power. He was authorized to ransom the vessel for 2,000 dollars ; and, taking prisoners on board would rather diminish, than increase the ransom. If paid for taking the prisoners, it was a separate and independent contract. But it is enough that the consignee afterwards accepted the ransomed ship and cargo at *Charleston.*

THOMPSON, Ch. J. delivered the opinion of the court. There can be no doubt that the contract for the ransom of the vessel was a lawful contract. Such contracts are sanctioned by the laws of nations, and are not deemed a trading with the enemy ; (2 *Azuni*, 313.) nor was the passport given by the captors, upon the ransom, and accepted by the master of the captured vessel, in violation of the act of Congress. (2d *Aug.* 1818.) It was merely a certificate, given by the captors, to serve as a passport, and protect the ransomed vessel, from all other armed vessels belonging to the nation of which the captors were subjects, and to prevent another capture. (2 *Azuni*, 316.) It may, perhaps, come within the exception to the act of congress, (2d sec.) which declares that the act shall not prevent the acceptance of a

ALBANY,
anuary, 1818.

GOODRICH
v.
GORDON.

passport, granted by the commander of any ship of war of the enemy, to any ship or vessel of the *United States*, which may have been captured and given up, for the purpose of carrying prisoners, captured by the enemy, to the *United States*. Admitting, however, that the instrument given in the case before us is not the one contemplated by this provision, still, I think, the act does not at all extend to such certificates.

The only question in this case, then, is, whether the defendant is chargeable as an acceptor of this bill. In *Pillans & Rose* v. *Van Mierop & Hopkins*, (3 *Burr.* 1663.) Lord *Mansfield*, and the whole court, go the full length of saying, that a promise to accept a bill is equivalent to an acceptance, whether it be before or after the bill is drawn. Lord *Mansfield*, however, afterwards, in the case of *Pierson* v. *Dunlop*, (*Cowp.* 573.) in some measure, limits and qualifies his former doctrine. He observes, that it has been truly said, as a general rule, that the mere answer of a merchant to the drawer of a bill, saying, *I will duly honor it*, is no acceptance, unless accompanied with circumstances, which may induce a third person to take the bill by endorsement; but if there are any such circumstances, it may amount to an acceptance; thereby confining the rule to cases where third persons have acted upon the faith of such assurances, and have been induced, in consequence thereof, to take the bill. In *Johnson* v. *Collins*, (1 *East*, 98.) the rule, as laid down in *Pillans* v. *Van Mierop*, is certainly overruled; and, from the observations of the judges, the limitation and qualification, as contained in *Pierson* v. *Dunlop*, is not either sanctioned or approbated; nor am I aware that it has been expressly adopted, in any subsequent decision, in the *English* courts. But I think it may fairly be inferred, from the observations of the late Chief Justice, in *M'Evers* v. *Mason*, (10 *Johns. Rep.* 214.) that the rule, as laid down in *Pierson* v. *Dunlop*, is approved of by this court. It is there said, every one will agree, that an acceptance by a collateral paper may be good; and if that paper be shown to a third person, so as to excite credit, and induce him to advance money on the bill, such third person ought not to suffer by the confidence excited. Whether these observa-

tions were intended to apply to collateral acceptances of a bill already drawn, or to be afterwards drawn, does not appear. But I cannot see any sound principle upon which the cases can be distinguished. No question of want of consideration can arise in either case, and it is the credit, which such acceptance or engagement to accept has given to the bill, which gives to it its binding operation. The testimony in the case before us is very full to show, that this letter of the defendant, authorizing the drawing of the bill, accompanied it, at all times, and that it was upon the credit of that letter that the bill was taken by the plaintiff. It appears to me to be a gross violation of good faith, in the defendant, now to disclaim the authority of the captain to draw the bill. The letter may well be considered an authority to draw, accompanied by a promise to accept. It was an authority given for the express purpose of enabling the captain to draw the bill, which was an act done for the benefit of the defendant, and according to his instructions; and I think it binding upon him as an acceptance; and this is the opinion of the court. The plaintiff is, accordingly, entitled to judgment.(a)

ALBANY,<br>January, 1818.

GOODRICH<br>v.<br>GORDON.

Judgment for the plaintiff.(a)

(a) Vide *Coolidge* v. *Payson*, (2 *Wheaton*, 66.) in which the supreme court of the *United States* decided, "upon a review of the cases which are reported, that a letter, written within a reasonable time, before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill, on the credit of the letter, a virtual acceptance, binding the person who makes the promise."