## F. Cicotte *vs.* Gagnier and wife *et al.*

P. C. under seal acknowledged himself debtor to complainant in a sum certain, which he covenanted, unless sooner satisfied, should be paid out of such property as he might die the owner of. Afterwards in consideration of a covenant by the defendants, G. and wife, to support him during his lifetime, he leased to them certain premises for his lifetime and a specified term thereafter. Between three and four months after the lease, P. C. having in the meantime divested himself of all his other property, transferred to G. and wife, a mortgage of about $900, and $150 of personal property, in consideration of which, G. and wife covenanted to support P. C. during his life, and at his decease have him suitably interred. After P. C.'s death, complainant obtained judgment on his claim against the executor and filed his bill to reach the mortgage, &c., transferred by P. C. to G. and wife, or to charge them with the payment of so much of the value thereof as would satisfy his judgment. Held, that as G. and wife were already bound to support P. C., the sole consideration for the transfer of the mortgage, &c., to them, was the expense of P. C.'s burial, which was too trifling a consideration to support the transfer of so large an amount of property, and that therefor the transfer of the mortgage &c., to G. and wife, was voluntary as against complainant.

Where a creditor is advised by his debtor and a third party that the two are in treaty for a transfer to such third party, for a valuable consideration, of the debtor's property, and is not informed that by such transfer the debtor is to deprive himself of the means of paying his debts, and being required by them to declare whether he had any claim against the debtor or the property in question, declined to answer: Held, that the creditor is not by his silence estopped from seeking relief against the transfer.

The bona fide assignee of a mortgage, not charged in the bill with a knowledge of the complainant's equities against the assignor in respect to the mortgage, will not be held affected by those equities.

Appeal from Wayne Circuit Court, in Chancery.

*H. T. Backus,* for complainant.

*Messrs. Frazer, Gray* and *J. M. Howard,* for defendants.

By the Court, GREEN, J.

On the 9th day of February, 1844, Presque Coti, then of Detroit, since deceased, made and executed to the complainant an instrument in writing, under his hand and seal, by which he acknowledged himself to be indebted to the complainant, for services rendered by him for said Coti, up to and ending on the first day of January, 1844, in the sum of four hundred dollars, which he covenanted and agreed should, at his decease, be paid to said Cicotte, his heirs or assigns, &c., out of such estate and effects as he might die seized and possessed of, unless he should see fit sooner to pay the same.

He also further covenanted and agreed, in consideration of his affection for said Cicotte, and for the time and services which he was to continue to spend and render for said Coti, that he should have and be paid, one hundred dollars per year, from said first day of January then last past, to the time of the decease of said Coti, and at that rate for a fraction of a year; and in the event of the death of said Cicotte prior to the decease of Coti, then at the rate of one hundred dollars per year, to be paid to his heirs, &c., on the decease of said Coti, out of any estate and effects as aforesaid, and to be a charge thereupon, and to be considered a just debt of Coti, and to have preference over any will made, or to be made by Coti.

On the fourteenth day of February, 1845, Coti and Dorick Gagnier and Elizabeth his wife, entered into a covenant in writing, by which Coti leased to Gagnier and wife, certain buildings and premises for his life, and for a specified term thereafter; and Gagnier and wife covenanted and agreed that during the natural life of said Coti, they would furnish him with board, lodging, washing, attendance, and all other necessaries, free of all cost and charge therefor, either against himself or his estate.

On the thirtieth day of May, 1845, Coti had divested himself of all his property, (which was considerable at the time the agreement was made with Cicotte,) excepting a mortgage which he held upon a parcel of land in Detroit, executed to him by the defendant Lewis, on which there remained unpaid the sum of nine hundred dollars, and personal property of the value of about one hundred and fifty dollars. On the last named day, he entered into another agreement with Gagnier and

wife, whereby he transferred to them the mortgage and all his personal property, in consideration of the covenants therein contained on the part of the said Gagnier and wife to be performed, and of love and affection, and the nominal sum of one dollar; and the said Dorick and Elizabeth on their part, covenanted that they would at their own proper cost and charges, maintain and keep the said Presque Coti during his life, with good and sufficient meat, drink, lodging and washing, or cause the same to be done in a way satisfactory to him, and that after his death they would have him interred in a manner suitable to his rank and wishes.

Coti died on the 14th day of July, 1845, having on the 25th day of November, 1844, executed his last will and testament, appointing the Right Reverend Peter Paul Lefevre and Theodore Williams, of the city of Detroit, his executors.

Lefevre, upon the will being proved in the Probate Court, took out letters testamentary thereupon, and not being able to find any estate or effects of which Coti died seized, he made a return to the Probate Court accordingly.

On the 24th of November, 1845, Dorick and Elizabeth Gagnier assigned the mortgage to the defendant, David Cooper, for the sum of about $650, and there remained unpaid, as appears by a stipulation, signed by the solicitors of the respective parties, at that time, the sum of $700.

The complainant commenced a suit against Lefevre, the executor, in the Circuit Court for the county of Wayne, to recover the amount of his claim, and on the 14th day of May, 1848, obtained a judgment in said suit for the sum of $668 24 damages, and $9 54 costs of suit, against the executor, upon which an execution was issued, and returned unsatisfied.

The complainant filed his bill in this cause as a creditor of the estate of Coti, and seeks to reach the mortgage and property transferred to Dorick and Elizabeth Gagnier, or to charge the defendants with payment of the value thereof, or of so much as may be sufficient for the payment of his judgment with interest and costs. The bill having been dismissed in the Court below, as against Lefevre, and no appeal having been taken by the complainant, it is not necessary to inquire into the transactions set forth in the bill between Lefevre and Coti.

The bill charges that the lease, and the transfer of the mortgage and personal property were obtained by the defendants, Dorick and Elizabeth Gagnier, by means of deception, fraud and imposition practised by them upon Coti, but this charge is denied by the answers, and is not sustained by the proofs. But it is further charged that the said transfers and leasing were voluntary, and without consideration, and made with a full knowledge of the plaintiff's claim, and with the intent to defraud him of the same.

I do not deem it necessary to inquire whether the lease was good and valid as against the creditors of Coti or not, because it appears from the pleadings and proofs that Coti still retained property abundantly sufficient for the payment of the complainant's claim, and it does not appear that he owed any other debt. Coti had no family, nor any one dependent on him for support, and the Gagniers had bound themselves to support and provide for him during his life, in consideration of the lease.

But the assignment of the Lewis mortgage, and the transfer of the personal property, I think must be regarded as voluntary as against the complainant. The value of the estate transferred, was at least one thousand dollars. The consideration was the support and maintenance of Coti, which they were before legally bound to provide for, and the expenses of his burial. The latter, as between Coti's creditors and the Gagniers, must be regarded as the sole consideration, and this is but a trifling amount compared with the value of the property. It is stated in the answer of Dorick and Elizabeth Gagnier, that the first agreement for the support of Coti was a hard bargain; that Coti's infirmities increased so that he required much more care and attendance and medical aid than either party had anticipated; that the lease was unproductive, and that it would have been oppressive had they been obliged to fulfil their covenants for the consideration they had received; and that Coti, being conscious of these circumstances, and anxious to secure a performance of their covenants, and acknowledging the justice of their complaints, conveyed to them the mortgage and personal property, regarding it as no more than an adequate compensation for the care and attendance they were to bestow, and the expenses they were to incur in the fulfilment of their agreement. The testimony shows that conversations

substantially to this effect, were had between the parties to the arrangement; and the physician who attended Coti swears, that in his opinion, the consideration received by the Gagniers was no more than adequate for the obligations which they incurred.

It seems somewhat singular that Coti's rapidly declining state of health within the three and a half months after making the lease, and which terminated in his death only five months after the first agreement was made, should have been regarded by the Gagniers as an event which increased or was likely to increase the burthen of their obligations towards him, when they were bound to support and provide for him during his life. On the contrary it would seem most natural to suppose that his condition at that time indicated the probability, as was verified by the event, that their cares and responsibilities were soon to terminate. According to my apprehension this circumstance is calculated to throw some suspicion upon the motives and conduct of the Gagniers, in obtaining from Coti the mortgage and personal property under the last agreement. Had there been no creditor of Coti there would have been no one to complain, 'and the transfer would have been good as against Coti or his heirs. But Cicotte, being a creditor, has a right to complain; and the transfer being voluntary as against him, he has a right to insist upon the payment of his debt out of the property conveyed, or to charge the grantees with the payment thereof. (1 *Story's Eq. Jur.*, § 359 *and note;* 6 *Paige R.*, 62; 3 *John. Ch. R.*, 481; 2 *Doug. Mich. R.*, 326.)

By the transfer of all his remaining property, Coti divested himself of the power to pay any debt he might owe. This the Gagniers knew when they took the assignment. He owed Cicotte, the complainant, a debt to be paid out of the estate he might die seized and possessed of, but by this transaction he rendered himself insolvent, and if sustained, effectually defeated its recovery. This he had no right to do. The claims of justice are always imperative, and those of generosity must yield when both cannot be satisfied.

But it is insisted on the part of these defendants that the complainant cannot be admitted to avail himself of any claim as against them on account of the transfer of Coti's property, because they allege that

49

he was fully advised of the pending negotiation for such transfer, and being inquired of by them through their attorney whether he had any claim against Coti or the property in question, he declined to make any disclosure, or any answer to their inquiry. That if one is silent when conscience requires him to speak, he shall not be allowed to speak when conscience requires him to be silent, is a maxim of unquestioned soundness and wisdom. It would shock the moral sense of every man, if one were allowed to stand by and see his own property sold as the property of another, without making any objection to the sale, and afterwards to sustain an action against the innocent purchaser to recover it or its value. This would be a palpable fraud upon the purchaser, which the law cannot tolerate and a Court of Equity will never sanction.

In order to determine whether that rule is applicable in this case, it will be necessary to examine the facts relating to this point. The bill charges that at the time of the transfer, the defendants, Dorick and Elizabeth Gagnier, were informed and had full notice of the complainant's claim against Coti. In their answer to this charge these defendants deny that they had any knowledge or suspicion of the existence of the instrument executed by Coti to the complainant, but they admit that before they received the transfer of the mortgage and personal property from Coti, they had heard that the complainant had hinted that he had some claim against Coti, of the nature or existence of which they had no knowledge whatever. It appears from the pleadings and proofs, that on the 29th day of May, 1845, Mr. Gray, as the attorney of Dorick and Elizabeth Gagnier wrote and left at the house of the complainant a paper directed to him, as follows: "I am requested by Mr. Presque Coti, and Mr. Dorick Gagnier, of this city, to inform you that they have heard that you claim to hold accounts or obligations against Mr. P. Coti, the existence of which, he, Mr. Coti, denies. However, as Mr. Coti and Mr. Gagnier are in treaty relative to the conveyance 'of the property owned by the former, for a valuable consideration, to the latter, they deemed it best that you should be informed of their intention. Mr. G. will, of course, purchase the property as free from incumbrances; therefore, if you hold any demands against Mr. Coti, or liens on his property, and neglect or delay to give full notice thereof to Mr. Gagnier,

you will be barred from recovering the same of the real or personal property which may be sold or conveyed to him by Mr. Coti. In such event he will presume you have none." On the day following the reception of this communication, the complainant called on Mr. Gray and informed him that he had no reply to make.

It is contended, on the one side, that it was the duty of the complainant to respond to this request frankly and fully—that it was made in good faith, and for the sole purpose of eliciting the truth, in order that Gagnier might make the purchase without injuring the complainant, or if he could not do so, that he might abandon the treaty—and that Cicotte's reply to Mr. Gray was equivalent to a declaration that he had no claim against Coti or lien upon his property. On the other side, it is contended that it was deceptive and fraudulent, and did not inform the complainant of the true character of the proposed purchase and sale.

It must have appeared to the complainant singular at least, that such an inquiry should have been addressed to him on behalf of Mr. Coti, who had, a little over fifteen months before, with great apparent deliberation according to the testimony of Mr. Van Dyke, entered into an agreement by which he acknowledged an indebtedness to him of $400 for past services, and stipulated for payment for services to be rendered in the future by complainant, and agreed that the whole should be a charge upon his estate at his decease. He could not reasonably have supposed that Coti had forgotten the transaction, and he may well have been at some loss to discover the nature of so strange an inquiry. Had the inquiry been made on behalf of Gagnier alone, it would have appeared entirely reasonable that he should answer it, if the proposed purchase and sale would affect his interests. Cicotte, the complainant, is informed that "Mr. Coti and Mr. Gagnier are in treaty relative to the conveyance of the property owned by the former, for a valuable consideration, to the latter." This is all the information he had in regard to the character of the proposed transaction, and without any further explanation, the conclusion would naturally be that Mr. Coti was to receive from Gagnier money or other property equal in value to that he was to convey. With such a transaction Cicotte would have no right to interfere, because he would have no interest in it. It would leave Coti in just as good a situation as he was then in, and with the same

means of satisfying the complainant's claim. His estate would not thereby be diminished. Coti had already made provisions for his support during his life, and had ample means left to satisfy Cicotte's claim and pay the expenses of his burial. Cicotte could not therefore have inferred that the proposed conveyance for a valuable consideration, had any connexion with Coti's support, and he had no reason to suspect from the information given through Mr. Gray, that Coti was about to convey his property in such a manner as to divest himself of all his remaining estate. This was not a case, therefore, wherein conscience required the complainant to speak, and he is not estopped, by his silence, from seeking the relief prayed for by his bill.

The letter was written by Mr. Gray, at the request of the defendant, Dorick Gagnier, as appears by Mr. Gray's testimony; and this letter, with the admission contained in Gagnier's answer to the bill, shows that he had sufficient notice of complainant's claim to put him upon inquiry. If he would have protected himself against it, he should have caused information to be given to the complainant of the true character of the proposed arrangement between himself and Coti; and then if Cicotte had refused to speak, Gagnier would have stood in the same situation as if he had never heard of the claim. Not having done so, he must be regarded as having had full notice of it. The defendant Lewis, was made a party for the purpose of reaching the moneys in his hands, remaining unpaid upon the mortgage at the time of filing the bill. If Cooper is chargeable on account of the assignment of the mortgage to him by Dorick and Elizabeth Gagnier, the decree must be sustained as against Lewis, otherwise the bill must be dismissed as against him.

The bill states the covenant by Coti with the complainant—a conveyance to Lefevre in trust—the lease by Coti to Dorick and Elizabeth Gagnier, and their covenant to support Coti, and the agreement by which Coti conveyed to the Gagniers all his remaining estate, with the other facts and circumstances exhibiting the complainants rights as a creditor, and tending to show fraud on the part of Lefevre and Dorick and Elizabeth Gagnier, without implicating Cooper, or naming him as a party, and then charges that at the several times of obtaining said lease and said assignment of said mortgage and personal property of the said Coti, by the said Dorick and Elizabeth Gagnier, and the said

deed by the said Peter Paul Lefevre, they the said defendants, were well aware and informed, and had full notice of the claim of the complainant against said Coti, and obtained the same with a full intent and design of defrauding the complainant out of the same.

The bill subsequently states that some time in the year 1845, as the complainant is informed and believes, the said Dorick and Elizabeth Gagnier assigned, or pretended to assign, the said mortgage to David Cooper, of the city of Detroit, but that the complainant is wholly unadvised as to what were the terms of said assignment, the consideration therefor, or the time and terms of payment, &c., and prays a full discovery of the same, and claims that he is entitled to the benefit of the amount due on said mortgage at the time of the assignment thereof by Coti to Dorick and Elizabeth Gagnier; but Cooper is not charged, upon information, belief, or otherwise, with any knowledge of the existence of the complainant's claim, or of any of the facts or circumstances connected with the transactions between Coti and Cooper's assignors, upon which the equities of the complainant are based. A fair consideration appears to have been paid by Cooper for the assignment of the mortgage, and he swears in his answer that he purchased it in good faith.

The complainant has not stated a case which entitles him to relief upon any ground of fraud, as against Cooper, and he cannot recover upon a case not made by the bill.

The bill of complaint must therefore be dismissed as against the defendants Samuel Lewis and David Cooper, with costs, and a decree must be made against the defendants Dorick and Elizabeth Gagnier, for the amount of the judgment recovered by the complainant against Lefevre as executor, in the Circuit Court for the county of Wayne, with interest and costs of suit.

The view which we have taken of the facts in this case, renders it unnecessary to discuss several of the points made by counsel on the argument, and the principles of law applicable to those facts are too familiar to require a citation of authorities.