## Hewitt, Norton & Co. v. Goodrich & Co.

A telegraphic dispatch, by a factor to his consignor, in the words "we will honor your sight check for $2,000, being excess of remittances to meet acceptance" is an unconditional obligation to honor the sight check of the consignors for that amount, and a third person who purchases such check will be entitled to recover of the factors, although an attachment may have been levied in their hands by a creditor of the consignors.

APPEAL from the Second District Court of New Orleans, *Lea*, J.

*Garnet Duncan*, for plaintiffs. *Moïse & Randolph*, for defendants and appellants.

Voorhies, J. On the 31st January, 1854, *Goodrich & Co.*, of New Orleans, sent to *Spratt, Logan & Co.*, of Louisville, the following telegraphic dispatch:

"Letter sixteenth received. We will honor your sight check for two thousand dollars, being excess of remittances to meet acceptances."

This dispatch, as soon as received, was communicated to *Gordon & Co.*, also of Louisville, who thereupon bought of *Spratt, Logan & Co.*, the following check:

Exchange for $2,000.          Louisville, February 2, 1854.

At sight of this first of exchange (second unpaid), pay to the order of Messrs. *Gordon & Co.*, two thousand dollars, value received, as per telegraph dispatch, 31st ult.          SPRATT, LOGAN & CO.

To Goodrich & Co., New Orleans.

The plaintiffs are the holders of this check by endorsement from the payees, *Gordon & Co.* The record contains the following admissions:

"Defendants admit that *Gordon & Co.*, by their endorsement on said bill, transferred it to plaintiffs at Louisville, Ky., and enclosed it, with said dispatch, by mail, to plaintiffs, in a letter put in the Louisville postoffice, on or about the 6th of February, 1854, and which was received at the New Orleans postoffice on the 15th February, 1854. That said bill was presented to defendants and payment demanded by plaintiffs on the 18th of February, 1854, and that it was presented on the 15th of February, 1854, to defendants, for either acceptance or payment, and that defendants refused to pay or accept it. That the draft was bought by *Gordon & Co.* on the 2d of February, 1854, in good faith, of *Spratt, Logan & Co.* ; at the time, there were rumors prejudicial to the credit of *Spratt, Logan & Co.*, but, induced by the dispatch from the defendants with authority to draw, *Gordon & Co.* made the purchase of and sent the dispatch with the draft to Messrs. *Hewitt, Norton & Co.* The dispatch alluded to on file is genuine."

The check appears to have been duly protested for non-acceptance and nonpayment.

On the 13th of February, 1854, the fund on which this check was drawn, was attached at the suits of *Goodrich & Co.*, *Maltby & Co.*, and the Bank of Kentucky. The affidavits for the attachments in those cases were made by *W. Logan McKnight*, who is one of the defendants. It is admitted by the plaintiffs, that *W. Logan McKnight* was, on the 13th of February, 1854, the lawfully authorized agent of the Bank of Kentucky, and that he was the attorney in fact of *Maltby* when he made and filed the affidavit for him ; that the

amount of the first claim was about $10,000, the second, about $2,000, and the third about $4,000; and that these attachments were taken out on the 13th of February, 1854, and served in the hands of the defendants on the same day.

Two questions arising from this state of facts, are presented for our solution: 1st. Were the defendants bound to pay this bill, by reason of their telegraphic letter of credit, and the action taken upon it? 2d. Will the law countenance a factor in an attempt to prevent the execution of his promise and his duty to his principal, by an attachment procured by himself to stop funds in his own hands?

The language of the dispatch affords, in our opinion, a sufficient answer to the first question. It is clear, the obligation contracted by the defendants was unconditional—to honor the sight check of *Spratt, Logan & Co.* It was upon the faith of this promise, held out by the defendants to the world, that *Gordon & Co.* was induced to become the purchaser. In the case of *Nisbett* v. *Galbraith*, 3 An. 692, the court held the following language: "If the letter be, as we feel satisfied it is, a document intended to be exhibited to third parties, and to induce them to take *Whitaker's* bills, then the promise which the letter contains is, by intendment of law, a promise to any body taking a bill on the faith of the letter, and the advance of his money which the party makes on the inducement and faith of the letter, is a sufficient consideration; damage to the promisee constituting as good a consideration as benefit to the promisor."

But it is said by the appellants' counsel, "that a distinction must be taken between the obligation of a party who authorizes a draft on his own credit, and the obligation of an agent who authorizes a draft to be drawn by the owner for his money, which the agent announces he has in his hands. Had the defendants merely announced to *Spratt, Logan & Co.*, that they had in their hands $2,000, as an excess of remittances for acceptances, there is no question but what the distinction contended for would undoubtedly obtain. But they did more: they said: "We will honor your sight check." Checks, as bills of exchange, are negotiable instruments, generally payable to bearer, but sometimes to order, requiring, as essentials, a drawer, a drawee, and a payee.

It was manifestly the intention of the defendants by this communication, to authorize *Spratt, Logan & Co.* to put such an instrument in circulation; and it would therefore be inequitable to permit them to avail themselves of the means of defence on which they rely to defeat the plaintiffs' demand. It is obvious in this instance, that the assurance held out by the defendants, that the sight check would be honored by them, induced the payees to become the purchasers. We do not think there is any thing in the objection, that the plaintiffs did not take the bill on the faith of the alleged promise to accept. We take it that the dispatch accompanied the bill at all times. This is sufficient under the authority of *Goodrich* v. *Gordon*, 15 Johns. 6. It is admitted that the transfer of the check was made at Louisville and that the check and dispatch were both transferred by mail to the plaintiffs.

This view of the case renders it unnecessary to notice the other question.

It is therefore ordered and decreed, that the judgment of the District Court be affirmed, with costs.