Wm E. Bundy, *contra*.

---

(Hamilton County, O., Court of Common Pleas.)

### ANDERSON COUNTY DEPOSIT BANK v. THE TURNER-LOOKER CO.

---

Upon a letter from Cincinnati, addressed to one Walker, in Lawrencebury, Kentucky, directing him to pay taxes on certain whiskey and draw on defendant for the amount so paid, an action may be maintained for breach of promise to accept by a third person who purchased said draft without actual knowledge of the existence of any authority to draw this particular draft. Transactions of a similar character had often occurred between the same parties, and drafts drawn under like circumstances had always been honored by defendant.

A bill of exchange ordered from Ohio, to be drawn in Kentucky, and endorsed and the money upon it to be obtained there, though to be accepted in Ohio, is governed by the law of Kentucky, and not of Ohio.

(September 20, 1894.)

---

HOLLISTER, J.

Walker, a manufacturer of whiskey, residing and doing business in Kentucky, paid to the United States, at the request of defendant, the tax on certain whiskey sold by him to the defendant. In order to get the whiskey out of bond and ship it, it became necessary to pre-pay the tax. Defendant directed Walker to draw on it for the amount of the tax, as it and he had frequently done before in like cases. At this time the amount of the tax so paid was the only sum due Walker from the defendant.

Walker drew a draft as directed, in the following form:

$691.15.                                  Lawrenceburg, Ky., March 3, 1894.

Pay to the order of Anderson County Deposit Bank, six hundred and ninety-one and 15-100 dollars, value received, and charge to the account of

To The Turner-Looker Co.                              J. P. Walker.
            Cincinnati, O.                                per W. P. Walker.

Walker took the draft to the plaintiff, where he kept his account, and obtained on it the money with which he paid the tax.

Plaintiff had no direct knowledge from the defendant that Walker had been instructed to draw, although the evidence fairly shows that, from previous transactions of the same kind between Walker and the defendant, it was the custom, and known to the bank, for the tax on whiskey sold by Walker to the defendant to be paid in this way.

The plaintiff placed the amount of the draft to Walker's credit, and sent it to its correspondent at Cincinnati. The draft was presented to the defendant for payment, which was refused, for the reason that, earlier on the day of presentation, a writ of garnishment was served on defendant in a suit brought by Block against Walker in respect to a draft claimed to be due Block from Walker. It appears that the defendant had given notice to Block of Walker's intention to draw, having applied to Block for a loan of the money to meet the draft. The question is whether, not-withstanding the garnishment, the defendant must pay to the bank the amount of Walker's draft. The tesimony fairly establishes the fact that the bank purchased the draft from Walker, and did not merely take it for collection. The assistant cashier of the bank so testifies, and the bank's course of business with Walker relative to similar transactions with the defendant and other purchasers of Walker's whiskey, coupled with the fact that Walker was permitted to immediately check on his account in favor of the tax-gatherer for the amount of this tax, strongly indicate that such was the fact.

The question for decision is, whether or not the promise of the drawee of a draft, made in writing to the drawer, prior to the drawing of the draft, inures to the benefit of the holder who purchased the draft without knowledge of the promise.

On this subject the authorities are sadly in conflict. Says Mr. Daniels: "As to a written promise of the drawee to accept a non-existing bill, which was not communicated to the holder before he received it, the decisions are alike jarring and perplexing." Daniel on Negotiable Instruments, sec. 553, and he concludes, sec. 554, by observing that the "view generally obtains, that the promise to the drawee must induce its holder to take the bill thereafter drawn, in order to amount to an acceptance of it." This conclusion is justified by the highest authority, and is founded on principle.

In Payson v. Coolidge, 2 Wheat., 66, Mr. Chief Justice Marshall lays down the rule: "A letter, written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who afterwards takes the bill on the credit of the letter, a virtual acceptance binding the person who makes the promise."

This rule is referred to and adopted in Lewis v. Kramer, 3 Md., 265, 289; Kennedy v. Geddes, 8 Ala., 263; Exchange Bank of St. Louis v. Rice, 98 Mass., 288, and was repeated, totidem verbis, by Justices Story, McLean and Nelson in cases subsequently decided. See Schimmelfennick v. Bayard, 1 Pet., 264, 284; Boyce v. Edwards, 4 Pet., 121; Wilder v. Savage, 1 Story, 22, 27; Russell v. Wiggins, 2 Story, 213, 234; Bayard v. Lathy, 2 McLean, 462; Cassel v. Dows, 1 Blatchf. C. C., 335, 341. The rule as to non-existing bills had been previously announced in Massachusetts, and afterwards followed by the Supreme Judicial Court of that state and by the Supreme Court of New York. Wilson v. Clements, 3 Mass., 1, 10; Storer v. Logan, 9 Mass., 58; McEvers v. Gason, 10 Johns., 206; Goodrich v. Gordon, 15 Johns., 6; Parker v. Greele, 5 Wend., 545; Carnegie v. Morrison, 2 Mich., 381, 406; Murdock v. Mills, 11 Mich., 5. The

Supreme Court of Ohio in Sherwin v. Brigham, 39 Ohio St., 137, at page 139, announces substantially the same rule: "In order to render the defendant liable, either upon an implied acceptance of the drafts, or upon an agreement to accept the same, it was necessary for the plaintiffs to prove that the drafts were drawn in accordance with the terms of the authority given by the defendant, and that the plaintiffs took them, for value, upon the faith of the letter of credit." And Lonsdale & Gray v. Lafayette Bank, 18 Ohio, 126, is conclusive of the law in Ohio on the subject.

This may be begarded as the American rule whatever may be the condition of the English authorities. So uniform has been the rule that only the cases, in this country, of Read v. Marsh, 5 Ben Monr, 8; Jones v. Bank, 34 Ills., 363, and Mason v. Dousay, 35 Ills., 424, so far as I can discover, hold the contrary doctrine. The rule is based on the principle of estoppel. The drawee of a bill may not deny his liability after a third person relying on the drawee's promise to accept, has taken the bill for value. Against the great weight of authority these Illinois and Kentucky cases would ordinarily present little force. But the law in Kentucky becomes important when we undertake to determine by what laws the contract in question is to be judged. If of Ohio, then there is no acceptance or valid promise to accept. If Read v. Marsh is to decide the question at issue, the case must be decided the other way; for in that case one Alexander drew a bill, payable to his own order, six months after date on Rea. About its date Alexander indorsed the bill to Marsh. Two months afterwards the bill was presented to Rea for acceptance, which was refused. A month later Rea wrote to Alexander promising to protect the draft. Shortly after the date of the letter Marsh was adviseed of its contents, and determined, "upon the faith of it, to hold the bill, and forward it to Louisville for collection." The bill was presented, payment refused, and suit brought. In deciding the case the court say: "It seems to be now well settled, that a letter, promising to accept or protect a bill, whether written before or after it is drawn, may operate as an acceptance, and that it may so operate, although the holder has not been induced by such letter or promise, to take the bill" citing Wynne v. Raikes, 5 East, 514. Continuing the court say: "The promise to protect the bill, in this case, is unqualified and express, and the whole letter of a character well calculated to give credit to the bill, and to induce persons to take it upon the faith of the promise to protect it. It is true the plaintiff was, at the date of the letter, the holder of the bill, but upon being advised of the contents of the letter, although the defendant had previously refused to accept it, he retains it, and again forwards it for collection. We are, therefore, of opinion that the letter was a virtual acceptance of the bill therein referred to, and binding upon the defendants." It is very apparent that the facts in this case so clearly set out in the opinion of the court, bring the case within the rule in Payson v. Coolidge, and that, on the facts, the case does not make an exception to the rule at all. The case has no syllabus in its printed report, but the side note which takes the place of the syllabus, announces a rule of law not warranted by the facts in the case, and at variance with decisions of courts whose opinions are always well considered. As on authority Read v. Marsh ought not to have, and has no weight in this case for the purpose of assisting in determining what the law of Ohio is on this subject. But the case may become controlling as a proven fact in the case, if the law of Kentucky is to prevail. This court has no right to say, and could not say, what the Court of Appeals of Kentucky would do with Read v. Marsh if the facts in some other case under consideration of it, made it necessary to affirm that case

or overrule it.   It stands as the law of Kentucky to-day, and as such has been frequently referred to by courts and text-writers.   Considering, therefore, that case as evidence of a fact and not as authority, the next question is whether the law of Kentucky or of Ohio governs this contract.

Here again, we are met with a most curious contradiction of authority.

The rule is almost universal that the liability of the acception of a bill of exchange is fixed by the law of the place where the bill is accepted in absence of agreement to the contrary   It would be useless to multiply authority on this point.   Sufficient may be found in section 507 of Tiedeman on Commercial Paper, and in section 896 of Daniel on Negotiable Instruments.

There is a distinction between the promise to accept, taken as a promise merely, for the breach of which an action lies, and the promise taken as an acceptance, where the suit is brought on the bill itself   But that distinction only concerns the amount of proof required in either case, and does not go to the question of the law of the place of contract.   It would seem that the reason for the application of the rule would be as strong in one case as in the other.   In Boyce v. Edwards, 4 Pet., 111, 122, it is said: "The distinction between an action on a bill as an accepted bill, and one grounded on a breach of promise to accept, seems not to have been adverted to (in Payson v. Coolidge).   But the evidence necessary to support the one or the other, is materially different.   To maintain the former, the promise must be applied to the particular bill alleged in the declaration to have been accepted.   In the latter, the evidence may be of a more general character, and the authority to draw may be collected from circumstances."   In the case at bar the action is for breach of agreement; but the promise contained in the letter was made at Cincinnati, and the locus would be the same whatever the nature of the action.   The Supreme Court of Ohio, however, seems to take a different view, and furnishes the only case, so far as I have been able to discover, holding a doctrine contrary to the general rule.   Lonsdale & Gray at New Orleans purchased merchandise from E. Carter & Co., of Cincinnati, and directed them by letter to draw on them for the shipments as they were made, and agreed to pay the drafts. At the time of making the first shipment, Carter & Co. drew a draft on them, and discounted it at the Lafayette Bank of Cincinnati, to whose officers they showed the letter, and attached the bill of lading to the draft. They drew in all ten drafts for as many shipments.   The bank discounted them all on the faith of the letter.   The first six were paid, and on the refusal of Lonsdale & Gray to pay the last piece the bank brough suit, and counted on the letter as an acceptance, and as a promise.   (18 Ohio, 126.) The case was decided on the count for breach of contract, and is on all fours with the case at bar, and would be decisive of it, had not the question of lex loci contractus intervened.   But the question was squarely raised on a real issue in the case, and the court say, page 142: "But supposing the objection as to the parties removed, it has been urged in behalf of the defendants, that a recovery cannot be had, because no proof has been introduced to show what are the laws of Louisiana; that upon the principle of the "lex loci contractus" the law of that state must determine the rights and liabilities of the parties.   That is not the view which the court has taken of this contract.   The letter, indeed, is dated at New Orleans, and the acceptances were to be there; but the contract was closed in Cincinnati; the bills were to be drawn and indorsed there; the money upon them to be obtained, and the produce brought there.   With such a state of the facts, we suppose that Ohio furnishes the law of the contract." In the syllabus of the case is found this language: "The law of Ohio, and not of Louisiana, governs the contract."   In the case at the bar, the let-

ter it is true was written at Cincinnati, and the acceptance was to be there; but the contract was closed at Lawrencebury, Kentucky, the bill was to be drawn and indorsed there, and the money upon it to be obtained there. The facts fit the case of Lonsdale & Gray v. Lafayette Bank exactly, and that case must furnish the law of the locus of the contract, and sends us to Kentucky where Read v. Marsh is the fact in the case decisive of it. It is urged that the ruling on this point in Lonsdale & Gray v. Bank is a mere dictum, and should not control in the face of overwhelming authority contrary to its ruling. But it cannot be so regarded, for the point was a direct issue in the case; was raised in the briefs, and was reached by the court after a statement of the facts in the case to which the point applied, and the court expressly says that it cannot take the view of the contract contended for by the acceptors. While ordinarily the same consideration is not given to the syllabi in cases in the Ohio Reports as to the syllabi of cases in the Ohio State Reports, because in the former the reporters prepared the syllabi, yet the strong statement in the syllabus, coupled with the fact that the judges concurred on a point actually raised as one of the issues of the case, takes the case entirely out of the rule of obiter dictum, as I understand it. See Dictum, Bouviers's Law Dic.

The law of Ohio therefore fixes the place of payment in Kentucky, and under Read v. Marsh, the plaintiff is entitled to recover. It can make no difference that the Court of Appeals of Kentucky follows the general rule as to the place of contract, to which Lonsdale & Gray v. Bank is opposed, Stevenson v. Gregg, 89 Ky., 461. For the suit is brought in Ohio, and the law of Ohio says that in this case the law of Kentucky shall govern the contract, and although the law of Kentucky on such contracts as this is not the law of Ohio, yet it must prevail. In view of this conclusion it is not necessary to consider the question of equitable assignment raised by the plaintiff.

Jonas B. Frenkel, for plaintiff.

Max B. May, for defendant.