THE ALTON MARINE AND FIRE INSURANCE COMPANY, Appellants, *v.* NATHANIEL BUCKMASTER et al., Appellees.

### APPEAL FROM MADISON.

On a bill to quiet title, where the complainant relies upon the answer of the defendant to justify a decree, the answer should be so explicit as to show a case within the allegations of the bill.

A court of law is the proper tribunal for the adjudication of legal titles, and it is only in extraordinary cases, that a court of chancery will assume the trial of such titles. Bills filed for the purpose of quieting one legal title by the suppression of another, are received with great caution.

A bill to quiet title is only entertained by a court of equity, because the party is not in a position to force the holder of, or one claiming to defend under, the adverse title, into a court of law to contest its validity.

THIS was a bill filed by the Insurance Company against Buckmaster, Godfrey, Keating, and Krum, to quiet the title to the lots of land described in the opinion of the court. The opinion gives a full statement of the case.

At March term, 1850, of the Madison Circuit Court, UNDERWOOD, Judge, presiding, the bill was dismissed at the cost of the complainants, who prayed for and obtained this appeal.

DAVIS & EDWARDS, for appellants.

W. MARTIN, for appellees.

CATON, J. This bill shows, that the complainants, on the 24th of March, 1838, took a mortgage from Holderman, on lots five and six, and two thirds of lot seven, in block twenty-five, in Alton, which was duly acknowledged and recorded. That at the February term, 1838, of the Madison Circuit Court, Krum, as executor of Emerson, deceased, recovered a judgment against Holderman for $533.48 and costs; that Krum, at the time the mortgage was executed, was the attorney and legal adviser of the complainants and as such examined the title to these lots for them, which he found to be unincumbered except by his judgment; that he assured the complainants, that he had sufficient collateral security for the payment of his judgment, and that it should never be enforced against these lots; and that, relying upon these representations, the complainants took the mortgage; that at the April term, 1846, the complainants filed a bill to foreclose the mortgage, to which Krum was made a party, and in which it was charged, that any lien or incumbrance which Krum might have upon the lots in question, by virtue of his judgment, was subsequent and subject to the prior title of the complainants; and prayed, among other things, that Krum, as executor, might be foreclosed, and barred of and from all equity of redemption, and other right which he might have in the mortgaged premises; that Krum was served with process, and was present at the hearing of that suit, and that such proceedings were had therein; that Krum was, by the decree of the court, foreclosed, and barred of all equity of redemption, and right and interest in the premises; that under that decree of foreclosure, the premises were sold; the complainants became the purchaser and received a deed, which was dated on the 7th of May, 1844.

The bill further shows, that at the August term of the Madison Circuit Court, 1840, a judgment was rendered against said lot seven, for the taxes of 1839, upon which that lot was sold to one Marsh, who assigned the tax certificate to the complainants, who took tax-deed for the lot in 1845; that at the same time a similar judgment was rendered against the said lot five, which was sold to one Prickett, who took a deed therefor, in 1843, who on the 9th of May, 1844, conveyed the same lot to the complainants, the deed for which was duly recorded.

The bill further shows, that subsequent to the decree of foreclosure, Krum removed from the State, and that Keating was duly appointed administrator *de bonis non* of the estate of Emerson, and that the defendants, Godfrey and Buckmaster, pretend that they have become the owners of the said judgment by some purchase or transfer from Keating; that they caused an execution to be issued upon the said judgment, upon which the lots in question were sold to Buckmaster, under which sale he claims title as against the complainants.

The bill further shows, that the complainants have contracted to sell to one Beall the west half of lot five, and has agreed to give a good title thereto, and that a portion of the purchase-money is still unpaid, and that Beall refuses to complete the purchase, alleging that the property belongs to Buckmaster; and that the said claim of title by Buckmaster is injurious to the complainant by preventing the sale of the lots for their full value.

The prayer of the bill is, that Buckmaster may be decreed to convey all his title to the complainants and for general relief.

Keating answers, and admits his appointment as administrator, as charged in the bill and states, that as such he assigned the judgment to Godfrey for a consideration; denies all knowledge of the mortgage till after said assignment, and denies knowledge of the other matters charged in the bill.

Buckmaster, by his answer and amended answer, admits the judgment, which, he says, was assigned to Godfrey by Keating, and by Godfrey to himself; that he caused an execution to be issued on the judgment, which was levied on the property in question, and under which it was sold, and purchased by himself for a full consideration, for which a deed was executed to him by the sheriff. He admits the mortgage and foreclosure, but denies, that by the decree, his judgment lost its priority; he denies the allegations of the bill as to the representations of Krum, or that he held collateral security for the payment of the judgment; he denies that the property or any part thereof was legally sold for taxes.

Godfrey made no answer. A replication was filed to the answers of Keating and Buckmaster, and proofs were taken.

The proofs and exhibit show a judgment for the taxes for the year 1839 against lots five and seven, in block twenty-

five, and a precept to the sheriff for the sale of the same; also a tax-deed from the sheriff to Prickett, for lot five in block twenty-five, and a deed from him to the complainant, also a tax-deed from the sheriff to complainant, for lot seven in block twenty-five.

On the hearing, the Circuit Court dismissed the bill, and the complainants bring the suit here by appeal.

Neither the record nor decree in the suit of foreclosure, appears in this record; and all we know of what they contained, we glean from the imperfect pleadings of this suit. This bill states that it was averred in the bill of foreclosure, in substance, "that any claim, lien, or incumbrance, that the said Krum might have upon the said lots of land, under and by virtue of the said judgment, as executor of the last will and testament of the said William S. Emerson, deceased, was subsequent to, and subject to the prior title of your orators." As to the decree in that case, this bill avers that "at the April term thereof, (of the Circuit Court,) 1841, the said John M. Krum, executor as above mentioned, was, by a decree of this court, foreclosed, and debarred of all equity of redemption, and right and interest in and to the lots of land above mentioned."

Buckmaster, in his answer, admits "that the complainants foreclosed their mortgage against John A. Holderman, as alleged, and that John M. Krum, as executor of William S. Emerson, was made a defendant in said suit, and that a decree was entered against Holderman, as averred; but this respondent denies that the said decree extinguished the said judgment in favor of the said John M. Krum, or that the said judgment lost its priority over the said mortgage of the complainants, by reason of the said decree." This is the most that can be made of the answer, in support of the allegations of the bill, as averring the contents and effect of the record, in the suit of foreclosure; and I am of opinion that it does not show a case, in which the court had a right to decree, or in which it did decree, that the prior judgment of Krum should be postponed to the mortgage. Even the bill in this case, shows that the former bill described a subsequent judgment, and not one prior to the mortgage; and it was Krum's rights, under such subsequent judgment, which were barred and foreclosed by that decree. Any one, on inspecting

that record as it is described in this bill, might well conclude, that it was some subsequent judgment, and not the prior judgment, which was designed to be concluded by that decree. But admitting that the averments of this bill show, that the prior judgment was described in the former bill, and was, by that decree, postponed to the mortgage, still that is not admitted by the answer of Buckmaster, and no proof was taken to sustain that averment. The answer only admits that the mortgage was foreclosed against Holderman, as alleged, and it expressly denies that Krum's rights under that judgment were cut off.

I am of opinion, therefore, that this record does not show such a decree in the former suit, as bars the rights of Buckmaster, acquired under the judgment which he purchased of Keating.

The remaining question is in relation to the tax-title, relied upon by the complainant. In order to understand that properly, we must refer to the character and objects of this bill. The ostensible end of this suit is to quiet the complainant's title, and remove the cloud which the title of Buckmaster cast upon it. Buckmaster's title appears *primâ facie* to be good; and, as we think, it is unimpeached by the title acquired by the complainant under the mortgage. Shall we inquire into the tax-titles set up by the complainant in opposition to that of Buckmaster? A court of law is the proper tribunal for the adjudication of legal titles, and it is only in extraordinary cases, that a court of chancery will assume the trial of such titles. Even where a legal title is necessarily involved in a suit in chancery, if it presents any difficulty, it is very frequently sent to a court of law for trial. And bills filed for the purpose of quieting one legal title by the suppression of another, have ever been received by courts of equity with great caution. Trustees v. Gray, 1 Littell, 147. "The holder of a legal title, not in actual possession, cannot, as a general rule, maintain a bill to quiet his title, and to compel a relinquishment of adverse claims." Harris v. Smith, 2 Dana, 10; Nevin v. Belknap, 2 Johns. 537.

The reason why the party out of possession cannot maintain such a bill is, that he may bring an action at law, to test his title, which ordinarily a party in possession cannot do. Such

a bill is only entertained by a court of equity, because the party is not in a position to force the holder of, or one claiming to defend under, the adverse title, into a court of law to contest its validity; and this, as a general rule, is the test to which a court of equity will look to determine whether the necessity of the case requires its interference. By the application of this rule to the case before us, we see that we are not called upon to determine which of these legal titles is the best.

The complainant has the power of bringing that question before a court of law; and, when that is the case, as that court is better qualified than a court of equity to try those legal titles, they should be turned over to that jurisdiction. The bill shows that the complainant has sold a part of the premises in controversy, and that the purchaser refuses to pay the purchase-money, in consequence of the adverse title held by Buckmaster. Upon a suit brought for a recovery of the purchase-money agreed to be paid, the purchaser would be compelled to defend himself, by setting up the outstanding title of Buckmaster; and in this way, the validity of that legal title may properly be presented for the consideration of a court of law. For this reason, therefore, without expressing any opinion upon the validity of the tax-titles, we think, that no decree should be entered in the Court of Chancery, which shall determine the relative merits of the titles of the parties.

Upon these principles, this bill contains within itself the most conclusive reason why no decree should be entered in this suit, founded upon the decree in the suit foreclosing the mortgage. It is insisted, by the complainant, that the decree in the foreclosure suit secures to the title obtained under it a priority over the judgment. If that be so, then the complainant is already secured in all that he seeks by the present bill. If the Insurance Company is not satisfied with one decree securing that right, how is its condition improved by two decrees to the same effect? It may have the same pretext for filing another bill, for the purpose of obtaining a third decree of a similar character; and so on, without limit. If the company has such a decree as it represents, that decree needs no other support, and furnishes a most satisfactory reason, why the relief now sought should be denied.

The decree of the Circuit Court is affirmed.

TREAT, C. J.   In my opinion, the decree of foreclosure should, in a collateral proceeding, be held to have extinguished the lien of the judgment on the mortgaged premises.   In other respects I agree with the majority of the court.

*Decree affirmed.*