ELISHA WOLCOTT AND ANOTHER *vs.* CHAUNCEY ROBBINS.

A court of equity will not interfere for the mere purpose of settling a disputed boundary between adjoining proprietors.

Nor to quiet the possession of a party whose equitable title has by adverse possession become a legal one, as such party has adequate remedy at law.

PETITION in equity.

The petition alleged that Elisha Wolcott, one of the petitioners, in the manner and with the exceptions thereinafter stated, was the owner in fee simple of a certain lot of land situated in Wethersfield, called the Montague lot, formerly the estate of George and Sarah Montague, which on their death descended to their children, Martha, Abigail, Sarah, and Justus, and of which the portions of Martha and Abigail had since become vested in the said Wolcott; that in 1810, Robert Robbins, Sen., the ancestor of the respondent, sold to one Warner a strip of land one rod in width across the north side of the Montague lot, his title to which was acquired only as follows : being the owner of a lot of land adjacent to, immediately south of, and of equal width with the Montague lot, called the Robbins lot, he made an oral agreement with the Montague heirs for an exchange of a strip of land one rod in width on the north side of the Robbins lot, for the above strip afterward sold to Warner, and with them measured and staked off both strips, entering into possession of the strip taken by him and continuing to occupy until he had gained a title thereby, and the Montague heirs entering into possession of the other strip as they supposed, occcupying the same some ten years, as a part of their lot, and as their own property, after which time until 1842, said Robbins and his heirs, of whom the respondent was one, occupied the Montague lot in common with the Robbins lot, as tenants, paying rent to the Montagues for the use of their lot, the respondent as such heir occupying both lots from 1836 to 1842, and all parties supposing that the Montague lot included said strip; that there was never any division fence between the strip on the north side of the Robbins lot so

annexed to the Montague lot, and the Robbins lot, by reason whereof and of the occupancy of both lots by the said Robbins, Sen. and the respondent, it became and was still difficult to ascertain the exact dividing line between the two lots; that in 1842 the respondent purchased the remaining interest of the Montague heirs, the whole of the Montague lot thus becoming vested in the said Elisha Wolcott and the respondent, subject to the claims of the creditors of Justus Montague, then deceased; that said Wolcott as administrator of the estate of said Justus, sold the right of the said Justus in said land to one Bailey, who afterward reconveyed the same to him, said Wolcott; that since 1846, Charles Wolcott, the other petitioner, has occupied the same as tenant of said Elisha; that in 1853 the respondent recovered judgment against the said Charles Wolcott for the seizure and possession of the strip of land on the north side of the Robbins lot, and of one half of the interest of Justus Montague in the Montague lot, and was threatening to enforce the same by levy of an execution thereon; and prayed the court to determine in whom the strip of land of one rod in width on the north side of the Robbins lot was vested, to restrain the respondent from levying his execution, and to settle said disputed boundary.

The case was referred to a committee who found the facts stated in the petition, with some others which are immaterial in the view taken of the case by the court. The superior court reserved the questions arising on the facts for the advice of this court.

*Welles* and *Fellowes* for the petitioners.

1. Wolcott has an equitable right to have the rod of land in dispute on the north side of the Robbins lot decreed to be a part of the Montague lot. 1st. He has this right by virtue of the contract of exchange made in 1810, and of the acts of the parties under it. 2d. Robbins' ancestor received a full consideration for the land and always acquiesced in the right of the other party to enjoy it. Robbins himself also acquiesced until very recently. He now insists on asserting his legal title to deprive the petitioners of their equitable title.

This would be a fraud upon them which a court of equity will not permit. Adams' Equity, 198 n.

2. Equity will ascertain the boundaries of the Montague lot and the shares of the parties, and will quiet the petitioners in the possession of their share. In no other way can they be protected in the enjoyment of their equitable rights. The case is similar to one where a party has a contract for the purchase of land, which he has fully performed, and the other party refuses to convey, in which case specific performance would be decreed.

*L. F. Robinson* for the respondent.

1. The petitioners have an adequate remedy at law. They allege a legal title, and the boundary can be ascertained by a trial at law.

2. They are bound by the judgment at law, which found the title to the premises to be in the respondent.

3. Had they prayed for a specific performance of the contract of exchange, their petition could not have been granted, on account of the great lapse of time. The parties to the contract are all dead, and it can not appear that they did not rescind the agreement, or abandon it. All parties having knowingly slumbered on their rights, it would be odious on general principles of equity, and contrary to the express limitations of suits at law, to decree specific performance. Story's Eq. Jur., § 529. *Randolph* v. *Ware*, 3 Cranch, 303. *Biddle* v. *Wilkins*, 1 Pet., 685. *Smith* v. *Clay*, 3 Brown's Ch., 640. *McKnight* v. *Taylor*, 1 How., 161. *Bowman* v. *Walker*, id., 189. *Bracklen* v. *Martin*, 3 Yerg., 55. *Holt* v. *Rogers*, 8 Pet., 420. *Cane* v. *Saunders*, 2 A. K. Marsh., 64. Nor have the parties under whom the petitioners claim ever performed their part of the contract. *Morgan* v. *Morgan*, 2 Wheat., 290. *Ludlow* v. *Cooper*, 13 Ohio, 552. *Scott* v. *Barker*, 14 id, 547. *Logan* v. *McCord*, 2 A. K. Marsh., 224. But the bill asks no other remedy than relief against the judgment at law, and does not seek a specific performance of a parol contract.

4. The specific performance has been effected by the pos-

session of the parties, which has vested the title in them, according to the contract, and a formal conveyance is therefore no longer necessary, and not being necessary will not be decreed by the court.

HINMAN, J.  We have not been able to discover any ground in this case upon which the plaintiffs' bill can be sustained.  It can not be supported on the ground of quieting them, or either of them, in the possession of property to which they have an equitable but not a legal title.  In respect to the land in controversy, it is admitted and claimed that the title to it is a perfect legal title in one of the plaintiffs.  The bill commences with the allegation that the said Elisha Wolcott, in the manner and with the exceptions hereinafter stated, is the owner, in fee simple, of a certain lot of land, situated, &c., and subsequently it appears that the exceptions referred to respect only portions of the tract or lot of land, to which portions neither of the plaintiffs claim any title whatever.  Again, the bill does not seek the specific execution of the contract between Robert Robbins, Sen. and the heirs at law of George and Sarah Montague. It alleges a perfect legal title to one of the pieces of land which was the subject of that exchange to be in the petitioner, Elisha Wolcott, and it admits that the defendant has also a perfect title to the other piece.  Now as these titles have become perfected under that contract, and are vested in the parties respectively who ought to own them under it, it can be of no consequence whether they have become vested by deed, or by possession ; because all has now been accomplished that could be done by any decree for the specific performance of the original contract of exchange.

Upon the facts stated in the bill we can discover no other plausible ground for the interference of a court of equity. The only other object to which these facts seem to have any application, is the settlement of a disputed boundary between the land of Elisha Wolcott and the land of the defendant. And we are asked to settle that boundary, and to enjoin the defendant from levying his execution against Charles Wol-

cott on any portion of the land which may be found to belong to Elisha.

In this aspect, the plaintiffs ask to have the narrow strip of land south of the orginal Montague lot, which was the subject of exchange between Robert Robbins, Sen. and the Montague heirs, treated and considered as a part of that lot, and decreed to be so in the division of it between Elisha Wolcott and the defendant, its present owners, so that the boundary between them will be further south, thus giving to Elisha Wolcott a larger portion of the lot than he will otherwise obtain. And it is claimed that the fact that Robert Robbins, Sen., sold and agreed to convey this strip of land to the Montague heirs, in exchange for a similar strip from the north side of their lot, gives a court of equity jurisdiction of the case, on the ground, as we suppose, that as he did not in fact convey it to them by deed, they had originally an equitable title to have the contract of exchange executed, and this equitable title is still vested in Elisha Wolcott, as assignee of a part of the Montague lot, and he can avail himself of it in equity for the mere purpose of ascertaining and settling the disputed boundary between him and the other proprietor of the lot, although he has no interest whatever in the strip of land itself, except for the purpose of locating his boundary in reference to it.

But if, as the plaintiffs claim, this strip of land became by the original exchange a part of the Montague lot, we do not see why it will not as well answer for the southern boundary of that lot in a court of law as in a court of equity. The bill alleges that since said contract of exchange the said Montagues and their tenants have occupied said land as their own property, and as a part of their said lot, and all parties thus occupying understood and supposed that the said lot included the said strip so annexed to said lot in exchange by said Robert. If it has been thus treated, and the title has now become vested in the assignees of the Montague heirs, the state of the title for a portion of the time since the exchange was made can hardly be supposed to affect the boundaries of the present owners of the lot. But however this may be,

we can not say, upon the facts stated in the bill, that it has any different effect in a court of equity than such as it would have in a court of law. The plaintiffs do not claim that a mere controversy in respect to boundaries is sufficient to transfer to a court of equity, jurisdiction over the proper subject matter of an action at law, which depends upon it.

As remarked by Judge Story, (1 Eq. Jur. § 616) "where there is an ordinary legal remedy there is certainly no ground for the interference of courts of equity, and where there is a legal right there must, of necessity, ordinarily, be a legal remedy; and our courts of law are constantly employed in investigating disputed boundaries."

We have not been able, therefore, to see any ground on which the plaintiffs' bill can be sustained and we accordingly advise the superior court to dismiss it.

In this opinion the other judges concurred.

Bill to be dismissed.