JAMES W. COCHRAN, Appellant, *v.* THOMAS A. HARROW, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

If a man stands by, and suffers another to purchase land, to which he has a mortgage, or title, without making the facts known to the purchaser, he will be estopped in equity from exercising his legal right.

THE complainant, Harrow, filed his bill in chancery, setting forth:

That on or about the 23rd of February, 1854, he purchased of Samuel M. Hart, of Cincinnati, out lot, or block, number 13, in Canal Trustees' subdivision of section 7, township 39, R. 14 E., containing 10 acres, more or less, for $12,000, one-fourth cash, balance in three notes of $3,000 each, bearing six per cent. interest, payable in one, two and three years, respectively, and secured by mortgage on the premises, at the date of purchase.

That prior to said purchase, Hart employed land agents in Chicago, to sell said premises for him; and the first proposition to complainant was made by them, for Hart. Several interviews took place between them and complainant, and one or more between Hart and complainant, during the pendency of the negotiation; and as complainant was unacquainted with titles to land in Chicago, he reposed confidence in Hart, and in Sharp & Smith, and gave them directions on his part to look carefully into the same, and not to suffer him to be defrauded or to get a bad title; all of which Sharp & Smith, being his old acquaintances and friends, agreed to do for him. And complainant personally, and through Sharp & Smith, inquired particularly of Hart, before consummating the purchase, to know if his title was clear and unincumbered; and they both received in answer from Hart, his assurance that his title was entirely clear and unincumbered. It appeared of record at the time of the treaty for said purchase, that Hart derived his title from James W. Cochran, of Chicago, and as complainant had not time to get a full and regular abstract of title to said block, made, before the purchase, he caused an examination of the record to be personally made by Sharp & Smith, on the occasion of, and immediately prior to said purchase; who, on examining, found the deed of said Cochran to Hart, dated the 21st of February, 1854, acknowledged on same day, and filed for record on the 22nd of February, 1854, conveying to Hart the premises, in consideration of $9,000, acknowledged to be paid, and the receipt thereof fully acknowledged by the grantor, with the usual full covenants of title, and that the premises were clear

23

and unincumbered. They found no mortgage, trust deed, or other incumbrance, filed or recorded, from Hart to Cochran; all of which was duly reported by them to complainant; and for further precaution, complainant, prior to the purchase, caused application to be made by Sharp & Smith to Cochran, in person, who was informed by Sharp & Smith that complainant was in treaty with Hart for the purchase of the said premises which were then recently before sold by Cochran to Hart, and that Hart had represented that his title to the premises was clear and unincumbered; and for the safety of the purchaser, they wished for information, in behalf of complainant, from Cochran, whether in fact Hart was a reliable person, whose word and information might safely be taken and relied upon, in making said purchase. And thereupon, in answer to said inquiry, made on complainant's behalf, by his procurement, said Cochran answered and stated to Sharp & Smith, that Hart was a reliable person, whose information could be fully and safely taken and relied upon, in purchasing said premises. Cochran was also personally present when complainant, through Sharp and Smith, was transacting business in regard to said purchase, about the day of the date and execution of Hart's deed to complainant, and knew of said deed, purchase and sale, and was bound in good faith, if he had any incumbrance or lien on said premises, and against Hart for the purchase money, or any part thereof, or any claim whatever, to declare the same, or forever after be estopped from setting up the same against complainant's title thus acquired from Hart. Nevertheless, Cochran, on the occasion last specified, and also when particularly interrogated by Sharp & Smith, studiously and designedly kept out of view, concealed, and failed and neglected to make known the existence of any lien or incumbrance held by him against Hart and upon said premises.

That at the time of said purchase from Hart, and at the times and occasions last specified, Cochran held no incumbrance, trust deed or mortgage against Hart and on said premises, which could be discovered on the records, or from Cochran personally, by any efforts complainant could make or cause to be made.

Hart's deed to complainant bears date the 23rd of February, 1854, which is the true day of the purchase, and Cochran, on that day, had knowledge as above stated, and the notes and mortgage of complainant, for balance of purchase money, bear the same date and draw interest therefrom.

That on the 23rd of February, 1854, complainant paid Hart $1,500 of the purchase money, and left, by agreement, his three notes and mortgage, for $9,000, being the balance, with Sharp

& Smith, as the mutual agents of both parties—the $1,500, balance of the cash payment, to be remitted on return of complainant to Kentucky, which was actually done.

Immediately thereafter, complainant left for Kentucky, remitted the money, which, with the said notes and mortgage, were delivered by Sharp & Smith to Hart, who delivered his deed, with his wife's acknowledgment, to them, for complainant ; and said deed was filed for record on the 3rd of March, 1854 ; which is referred to.

Charge of confederacy against Cochran, Hart, and J. Mason Parker, and others not named, and that Cochran, on the 24th of February, 1854, and immediately after complainant had completed said purchase and left for Kentucky, brought to light, unknown to complainant and Sharp & Smith, and filed for record, in fraud of complainant's rights, a trust deed, dated February 21st, 1854, on said premises, from Hart to Cochran, purporting to secure a debt due by Hart to Cochran, of $5,039, and evidenced by three several notes, payable in one, two and three years after date, and each dated May 7th, 1854, for the respective sums of $1,720, $1,680, and $1,590 ; in which deed said J. Mason Parker is trustee for Cochran, with full power to sell said premises in case of default in the payment of any part of said notes, on application of Cochran, or the holder thereof, after publication in a newspaper sixty days before the day of sale, with all right and equity of redemption, and to execute a deed to the purchaser, and pay said debt and costs.

That until the discovery of said trust deed, complainant was at all times expecting and intending to be ready to meet his said notes as they matured ; that before such discovery he had, for said Hart's convenience, advanced him three several acceptances, amounting to $3,000, to anticipate the payment of the first of complainant's notes, which he did not take up, but left in Hart's hands. Afterwards he met Hart, who informed him it would be unnecessary to pay, and requested him not to pay, the first of said acceptances ; and in consequence he did not pay it. Before the others matured, he discovered the fraud of the trust deed, and therefore neglected to pay them till his rights were adjudicated. Otherwise, he is yet ready promptly to meet and cancel his notes and mortgage aforesaid, as the payments fall due.

That he is informed that the notes and acceptances given by him to Hart have been negotiated to other parties and put in circulation.

At the time of making said purchase, he had no knowledge or information that Hart owed anything on his purchase money, or that there was any incumbrance on said premises for any sum

due to Cochran or others; and he believes Sharp and Smith were equally uninformed thereof. His first information of Cochran's trust deed was derived from seeing an advertisement of the sale of said premises in a newspaper, on the trust deed; and he believes Sharp and Smith had no knowledge of such incumbrance till after the said purchase of Hart; nor was said discovery made until after the complainant's notes to Hart had been negotiated.

Parker has advertised a sale of said premises under the trust deed, in default of payment of the first of Hart's three notes to Cochran; and said sale is to take place on 21st August, 1855.

Cochran, Hart and Parker made defendants, and required to answer, but oath waived.

Cochran, by his answer, admits sale of land by Hart to Harrow, on 23rd February, 1854, and on that day it appeared of record that Hart derived title of respondent, by deed, as set forth in the bill; that on said day the trust deed from Hart to respondent was not filed for record; and that Parker, trustee, had advertised a sale of the premises.

Knows nothing of Sharp and Smith's employment for Hart, but was aware that they acted for some of the parties, though he does not know by whom employed.

Knows nothing of any conversation between Sharp and Smith, or either of them and Hart, either when respondent was present, or at any other time, when Hart represented to them or to Harrow, that his title to the land was clear and unincumbered, and denies that any such representation was ever made by Hart to Harrow, or Sharp and Smith, or either of them, in the hearing of respondent; and if made at all, respondent never heard it.

Denies that he knew in any manner of the representation of Hart, if ever made, that said land was clear and unincumbered, previous to or at the time of sale, and never heard it charged upon him until a short time before the filing of complainant's bill, and then from said Smith.

Denies that Sharp or Smith, or Harrow, ever called on him in person, and informed him that Hart had represented to either of them " that his title to the premises was clear and unincumbered," and for the safety of the purchaser they wished for information " whether, in fact, said Hart was a reliable person, whose word and information might safely be taken in the premises, and relied upon in making the purchase;" and that thereupon, in answer to said inquiry, made in behalf of said complainant, this respondent " answered and stated to Sharp and Smith that Hart was a reliable person, whose information in the premises could be fully and safely taken and relied upon in taking and purchasing said land." This, your respondent

does not admit, but positively denies that any such conversation ever took place between himself and Sharp and Smith, and further denies that Sharp and Smith ever asked him any question in relation to the title of Hart, and whether there was any incumbrance on the property.

The court, on the evidence and pleadings, decreed that the equity of the case was with the complainant; that Cochran be estopped from claiming any right, title or interest in said property, under said deed of trust. Defendants Cochran and Parker were perpetually enjoined and restrained from setting up any right or interest in, or claim to said property, by means of said deed of trust. And costs and charges were adjudged against said Cochran.

An appeal was prayed by Cochran, and he assigns for error,

1. The court erred in decreeing that the defendant, Cochran, be estopped from claiming any right, title or interest in and to the property in controversy, under the deed of trust from Hart to Cochran.

2. The court erred in decreeing that the defendants, Cochran and Parker, be perpetually enjoined and restrained from setting up any right, or interest, or claim, in and to said property, under said trust deed.

3. The court erred in adjudging costs and charges against defendant, Cochran.

WALLER & CAULFIELD, for Appellant.

R. S. BLACKWELL, for Appellee.

BREESE, J. Do the facts in this case sufficiently show an equitable estoppel ?

An equitable estoppel is said to be where one knowingly, though he does it passively, by looking on, suffers another to purchase land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel.

The proof in this case is full to the point that the appellant, when spoken to by the agent of the appellee, about the title to the property in dispute, stated it was good in Hart, and when the trade was concluded at the Tremont House, on the evening of 23rd February, and fifteen hundred dollars of the purchase money paid by appellee in the presence of the appellant, and when, at the time, appellee declared he would buy no property with " a cut-throat mortgage " upon it, the appellant cannot now

be permitted to set up such mortgage to defeat the appellee. He concealed his interest when he should have disclosed it. Good faith required him, when called upon by appellee's agent about the title, and when consulted on the subject, to mention his unrecorded trust deed. His not doing so, was a fraud upon the appellee. As he chose to preserve silence when duty required him to speak, he shall not be heard, when justice requires him to be silent.

The decree is affirmed.

*Decree affirmed.*