MORAN *v.* PALMER.

---

Charles Moran v. Friend Palmer, Henrietta Taylor and Charles Taylor.

Friend Palmer, Henrietta Taylor, and Charles Taylor, v. Charles Moran.

*Deeds of Governor and Judges — Recording laws.* — Conveyances of land from the United States, whether directly through the President, or indirectly as through the Governor and Judges of Michigan, do not come within the purview of the recording laws, except where the terms employed specially include them;

MORAN v. PALMER.

and there is nothing in the laws now or heretofore existing in this State that will render a deed from the Governor and Judges void in favor of a subsequent purchaser, from the same source, without notice whose deed was first upon record.

*Bill to quiet-title.* — A bill to quiet title will be entertained on behalf of the legal owner when he is not in a position to force the adverse claimant into a Court of law to test its validity; but when each party claims the legal title, and a Court of law is already possessed of thecase, and it is not alleged that either fraud, accident or mistake has intervened to prevent the possessor establishing his title at law, equity will not interfere.

*Proof of case not stated in the pleadings.* — Where the complainant in a bill to quiet title to lands set up the legal title as being in himself, but the evidence taken in the cause showed it to be in the adverse claimant, and also showed a complete equitable title to the land in the complainant, it was *held*, that no relief could be granted, as the case shown by the evidence differed from that stated in the bill.

*Held also*, that estoppels, where they form the foundation of the relief asked, and are relied upon to defeat a legal title, cannot be proved, unless alleged. *Cicotte v. Gagnier,* 2 *Mich.* 389.

*Partnership — lands received by, in payment of debts* — Lands conveyed to the members of a partnership in satisfaction of a partnership debt, are to be regarded, for all purposes of arranging balances between the partners, paying debts, and closing the partnership business, as personal property. And where one of the partners afterwards exchanged a lot so received, for another, giving a deed in his own name alone, and the lot received in exchange was sold by him, and the proceeds received by the partnership; — *Held,* That the Court would presume knowledge on the part of all the partners of such exchange, and that the receipt by the partnership of the proceeds of the lot sold, estopped the heirs of the partners not joining in such deed from afterwards setting up a claim to the lot first named.

*Heard May 9, 10 and 11. Decided July 8.*

Appeal in chancery from Wayne Circuit.
The facts are stated in the opinion.

*Backus & Harbaugh* for appellants.

*Wm. Gray and S. D. Miller* for appellee.

COOLEY J.:

The original bill was filed to quiet the title of complainant to lot thirty-seven in section eight, according to the Governor and Judges' plan of the City of Detroit. The bill alleges that the Governor and Judges conveyed the lot to Barnabas Campau, December 21, 1833; that the deed thereof was duly recorded in the Register's office of the City of Detroit, December 19, 1834, and again,

after being duly acknowledged and proved, in the Register's office of Wayne County, November 29, 1859; that by due chain of conveyances, the title to said lot in fee simple became vested in Alexandrine M. Willis, who, with her husband Richard S. Willis, conveyed the same to complainant, August 1, 1862, and that complainant now has the legal title to, and is the sole owner in fee simple, and in the actual possession of the same. It then alleges a continuous possession of the premises by Campau, and those claiming under him, from the time he received his deed; that they have claimed to be the owners, paid taxes, made improvements, and performed all acts of owners; that the defendants now claim to be part owners of the premises; that at times they claim and pretend that they have rights under an unrecorded deed from said Governor and Judges to one of their ancestors and some other persons, prior to said deed to Campau, while, at other times, they pretend that they have such rights by reason of some legal proceedings between them and some parties other than the complainant, or any one, by, through, or under whom he derives title; that all such claims and pretences are entirely unfounded, and constitute a cloud upon complainant's title, seriously decreasing the value of his property. Wherefore complainant prays relief, and that the Court may decree and declare that complainant has a full, clear and perfect title to said lot, and that defendants have no interest or title in or to the same, and may award a perpetual injunction against their setting up or asserting any such claim or interest.

The defendants filed an answer, claiming an undivided one-third of the lot as heirs at law of Friend Palmer, senior, by virtue of the following conveyances: From the Governor and Judges to Michael Mayet, February 17, 1809; from Mayet to Jacob Smith, July 7, 1820, and from Jacob Smith to John, Thomas and Friend Palmer, July 16, 1820. The answer also shows that, under the said

conveyances, and as such heirs at law, they brought suit in ejectment in the Circuit Court for the County of Wayne, against one De Graff, who is tenant of complainant, to recover the undivided interest so claimed by them, which suit was vigorously defended by complainant, and has resulted in a verdict in their favor. The answer also sets up other facts not material to the decision upon this bill, and a discussion of which is therefore omitted by us. Replication was filed to the answer, and proofs taken, establishing the existence of the several deeds as set forth, as well as the proceedings in the ejectment suit.

We have thus presented to us the anomaly of a party who asserts that he is possessed of a complete legal title to lands which are occupied by him, and who points out no difficulty in the way of his exhibiting and establishing such title, appealing to a Court of equity for relief against the claims of other parties who are pressing their claims against him at law, and have already obtained an adjudication in their favor. Argument to show that this bill cannot be sustained, is entirely unnecessary. If the facts, as above stated, were fully set forth in the bill, it would be demurrable, and being presented by way of defence, they are a complete answer to complainant's case. A Court of law is the appropriate tribunal for the trial of titles to land. — *Abbott v. Allen*, 2 *Johns. Ch.*, 520; *Devaux v. City of Detroit*, *Har. Ch.*, 98. The claimant of a legal title has a right to have the facts upon which his claim is based submitted to a jury, and it is only when the remedy at law is inadequate that resort can be had to equity. Nothing is better settled than that equity will not aid in clearing a title to land when complainant's remedy at law is complete. *Alton Marine and Fire Ins. Co. v. Buckmaster, et al.*, 13 *Ill.*, 201; *Smith v. McConnell*, 17 *Ill.*, 135; *Ritchie v. Dorland*, 6 *Cal.*, 33; *Wolcott v. Robbins*, 26 *Conn.*, 236; *Munson v. Munson*, 28 *Conn.*, 582; *Shotwell v.*

*Lawson*, 30 *Miss.*, 27; *Murphy v. Blair*, 12 *Ind.*, 184.
And when the party comes into equity for relief, he
must set forth in his bill the circumstances which deprive
him of a legal remedy. — *Williams v. Ayrault*, 31 *Barb.*,
364. A bill to quiet title on behalf of the legal owner,
is only entertained where the party is not in a position
to force the adverse claimant into a Court of law to
test its validity. — *Alton Marine and Fire Ins. Co. v.
Buckmaster*, 13 *Ill.*, 201. This happens when the holder
of the legal title is in possession, and an adverse claim
is set up, which no steps are taken to enforce; but
when each party claims the legal title, and the Court of
law is already possessed of the case, and it is not
alleged that either fraud, accident or mistake has inter-
vened to prevent the possessor establishing at law all the
title which he claims, the remedy at law is perfect and
equity can not interfere to take from a jury the trial of
the questions, which, in such a case, belong to that tri-
bunal. The more clearly the complainant establishes his
title under such circumstances, the more clearly does he
show that the relief he seeks is not within the province
of a Court of equity.

The facts proved in this case, however, do not, in our
opinion, establish a legal title in complainant; and it
remains to be seen whether he can have any relief based
upon equities which he may have shown to exist in
himself against the title asserted and proved by defend-
ants. These equities spring from *estoppels en pais*, which
are not alluded to either in the bill or in the answer,
though the facts from which they are supposed to spring
have been fully proved. They are of a nature which, it
is argued, should preclude the defendants from setting
up and relying upon their legal title as against the
equitable rights of complainant; but it is of little moment
to complainant that they have been proved unless the
issue is so framed that, according to the rules of equity

pleading, the facts established can be made a foundation for relief.

· The rule of pleading in equity is that "every fact essential to the plaintiff's title to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal. For no facts are · properly in issue unless stated in the bill, and, of course, no proofs can be generally offered of facts not in the bill; nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the Court pronounces its decree *secundum allegata et probata.*—*Story's Eq. Pl.,* §257. See, also, *Shepard v. Shepard,* 6 *Conn.,* 37; *Cowles v. Buchanan,* 3 *Iredell Ch.,* 374; *Parker v. Carter,* 4 *Munf.,* 273; *Ellston v. Blanchard,* 2 *Scam.,* 420; *De Tastet v. Tavernier,* 1 *Keene,* 169. The Courts of this State have frequently decided that no relief can be given on evidence establishing a case not made by the bill. — *Cicotte v. Gagnier,* 2 *Mich.,* 381; *Warner v. Whittaker,* 6 *Mich.,* 133; *Bloomer v. Henderson,* 8 *Mich.,* 395; *Boniver v. Caldwell,* 8 *Mich.,* 463; *Barrows v. Baughman,* 9 *Mich.,* 213; *Wurcherer v. Hewitt,* 10 *Mich.,* 453; *Dunn v. Dunn,* 11 *Mich.,* 284; *Peckham v. Buffam,* 11 *Mich.,* 529; *Thayer v. Lane, Wal. Ch.,* 200. Even if the answer should disclose a clear title to relief, it cannot be resorted to as supplying allegations essential to the bill. — *Gres. Eq. Ev.,* 23; *Savage v. Lane,* 6 *Har.,* 32; *Jackson v. Ashton,* 11 *Pet.,* 229; *Knox v. Smith,* 4 *How.,* 298; *Thomas v. Warner,* 15 *Vt.,* 110.

No relief, therefore, can be granted to complainant based upon the equitable title which he claims to have established, not only because such relief must be given upon a case radically different from that set forth, but also because the equitable circumstances relied upon would require to be specifically set forth. Estoppels, when they form the foundation of the relief asked, and are relied

upon to defeat a legal title, cannot be proved unless alleged, (*See Cicotte v. Gagnier,* 2 *Mich.,* 389.) so that, even if we could disregard the fact that the title of complainant is of a different nature from that claimed by the bill, there is obviously nothing in this bill to which we can apply the evidence which goes to establish the equities of complainant.

The defendants, however, have filed a cross-bill to have the undivided one-third interest which they claim in the premises partitioned and set off to them; and the issue taken upon this is so full and complete that we find the whole merits of the respective claims to this lot fully presented. The evidence was all taken to be used in both suits, and the bill and cross-bill were brought to a hearing together; and as the facts are for the most part undisputed, and all, which we deem material, are either admitted or established to our satisfation, we shall now proceed to consider them with reference to the relief prayed by the cross-bill. .

February 17th, 1809, the Governor and Judges of Michigan Territory executed to Michael Mayet a deed of the lot in controversy, as his donation lot under the Act of Congress, "To provide for the adjustment of titles of land in the town of Detroit and Territory of Michigan, and for other purposes," approved April 21, 1806. Mayet deeded to Jacob Smith July 7th, 1820, and Smith, on the sixteenth day of the same month, conveyed the lot to John, Thomas and Friend Palmer, then composing a mercantile firm in Detroit, in satisfaction of a debt due by him to the firm. The partnership continued to own the lot until January 31, 1824, when Thomas Palmer, who seems to have been the active member of the partnership at Detroit, made an arrangement with the Governor and Judges on the mistaken supposition that the lot had been conveyed by them to another person previous to the deed to Mayet, in which arrangement it was.

agreed that a release should be made of this lot to them, and that Palmer should receive instead a deed of another lot upon the same plat. This arrangement was entered into by the Governor and Judges on the understanding that Thomas Palmer was the sole grantee of Jacob Smith; the release which Thomas Palmer executed to them stated the conveyance to have been made by Smith to him, and the entry which the Governor and Judges caused to be made in their record clearly shows that they supposed all right or claim derived under the Mayet deed had now been released. Accordingly they conveyed to Thomas Palmer another lot of equal value, in pursuance of the arrangement, and for no other consideration than such release. The last mentioned lot was treated by Thomas Palmer as belonging to the partnership, and it was subsequently sold by him, and the proceeds received by the firm.

September 19, 1829, the Governor and Judges, supposing the lot now in controversy to be subject to sale by them like all the other portions of the public lands which they were authorized to dispose of, caused the same to be offered for sale at public auction, and it was struck off to Barnabas Campau, who bought in good faith for the consideration of $270, which he subsequently paid and received his deed, bearing date November 20, 1833. Campau took actual possession of the lot in 1845, and valuable improvements have since been made upon it. Complainant's title is derived through Campau, and no adverse claim seems to have been made until about the year 1853, when it was claimed, on behalf of John Palmer and the heirs of Friend, that the release of Thomas Palmer to the Governor and Judges only operated to convey to them an undivided one-third of the lot, and that, therefore, they had conveyed that interest only to Campau. John Palmer afterwards released to Campau, but the heirs of Friend Palmer declined to do so, and brought suit in ejectment, as before stated.

MORAN v. PALMER.

It cannot be denied that, so far as the legal title is concerned, the release of Thomas Palmer to the Governor and Judges could pass an undivided one-third only, and that consequently there is a complete chain of title from the original source to the heirs of Friend Palmer, which must avail in their behalf, unless some of the conveyances in the chain are avoided, or at least affected, by the objections made to them on the argument. The nature of the defence to the cross-bill is two-fold:

First. *Under the recording laws.* The deed from the Governor and Judges to Mayet has never been recorded, and it is not alleged that Campau had knowledge of it at the time he purchased and paid for the lot. The deed to Campau was recorded in December, 1834, but at that time it had not been authenticated by acknowledgment or proof in the manner required by the recording laws, and it was again recorded, in 1859, after having been proved in due form of law. And Moran, the defendant in the cross-bill, now claims that the deed to Mayet is void as against the subsequent deed to Campau, who bought in good faith, and without notice, and whose conveyance is first upon the record.

It is to be borne in mind that the Governor and Judges were not owners of the soil, but that they were mere donees of a power, and that the conveyances executed by them were made on behalf of the United States. It has been repeatedly held that patents of land from the United States do not come within the purview of the recording laws, where the terms employed do not specially include them. — *Lyell v. Maynard,* 6 *McLean,* 15; *Graves v. Bruen,* 1 *Gilm.,* 167. The record of a patent, therefore, under the ordinary recording laws, is not even evidence. A statute authorizing their record was passed in this State in 1837, ( *Comp. Laws,* §2764, §2765); but that statute only authorized the record, or a transcript thereof, to be used as evidence, and did not

undertake to make the patents not recorded void, in favor of subsequent bona fide purchasers from the United States. We are of opinion that the same rule is to be applied to all conveyances by the United States, as owners of the original domain, whether they are made directly through the President, or indirectly through other agencies, and that, therefore, the words, "all deeds," as used in the early codes, ( *Cass Code, p.* 80; *Code of* 1820, *p.* 156; *Code of* 1827, *p.* 258; *Code of* 1833, *p.* 279,) do not embrace those given on behalf of the Government. The first statute, which, in express terms, applies to conveyances by the Governor and Judges is, "An Act relative to the registry of certain deeds," approved March 9, 1844, which authorized those conveyances to be recorded and made the record evidence; and it confirmed records before made, so far as to make them evidence also. But that Act contains no provisions which could have the effect to avoid the first in favor of a subsequent conveyance from the Governor and Judges, and it is not likely that any such purpose was contemplated by the Legislature. We do not find, therefore, that Campau and his assigns are entitled to claim any advantage under the recording laws, over the prior deed to Mayet.

Second. *Through equitable estoppel.* Thomas Palmer, having represented to the Governor and Judges that he was the sole grantee of Jacob Smith, and they having, in reliance upon this representation, received the release from him, and conveyed a lot of equal value, in consideration thereof, the avails of which were subsequently received by the partnership of which the ancestor of the complainants in the cross-bill was a member, it is insisted that they are now estopped in equity from setting up any claim to the lot so released.

It is unquestionably true that the lot having been conveyed by Smith to the Palmers in satisfaction of a

debt due to the firm, it is to be regarded for all the purposes of arranging balances between the partners, of paying debts and closing the partnership business, as personal property. — *Dyer v. Clark*, 5 *Metc.*, 562; *Buchan v. Sumner*, 2 *Barb. Ch.*, 165. And in England it seems to be now well settled that, by becoming partnership property, it is to be regarded as converted into personalty for all purposes. — *Ripley v. Waterworth* 7 *Ves.*, 425; *Phillips v. Phillips*, 1 *M. & K.*, 649; *Brown v. Brown*, 3 *M. & R.*, 443; *Morris v. Kearsley*, 2 *Y. & C.*, 139; *Houghton v. Houghton*, 11 *Sim.*, 491. It is true that one partner could not convey the legal title of all, for the rule that one has no general authority to affix a seal on behalf of his co-partners, would prevent; but it is not so clear that he might not make a valid contract to convey, or that an ineffectual deed might not have the force of such a contract where the partnership has received the consideration money.

But without now stopping to inquire into the force and effect to be allowed the release of Thomas Palmer, as a written instrument, we are of opinion that the position taken by Moran, in respect to this branch of the case, is correct, and that the heirs of Friend Palmer are estopped from setting up any claim to this lot adverse to that claimed under the Campau deed. It is a well settled principle of equity, that if a man, having a title to an estate which is offered for sale, knowingly allows another to sell it to a purchaser who supposes the title to be good, without, at the time, asserting his title, he shall be bound by the sale, and neither he nor his privies shall be allowed to dispute its validity. — *Wendell v. Van Rensselaer*, 1 *Johns. Ch.*, 354; *Storrs v. Barker*, 6 *Johns. Ch.*, 166; *Tilton v. Nelson*, 27 *Barb.*, 595; *Cochran v. Harrow*, 22 *Ill.*, 345; *Beryan v. Ramiser*, 8 *Cal.*, 461; *Cicotte v. Gagnier*, 2 *Mich.*, 386; *Story's Eq. Juris.*, §385. Especially should this be the rule of equity when

the silent party has himself received the benefit of the
sale, and where, therefore, he can suffer no detriment
from its application, but is only restrained from appro-
priating to his own use a second time that for which he
has once been paid.

That Friend Palmer knew of the arrangement made
between Thomas Palmer and the Governor and Judges,
and of the subsequent sale of the lot received in exchange,
we think, is to be presumed.   Each partner is the gen-
eral agent of the others in all matters within the scope
of the partnership business, and what is known to one
is supposed to be known to all.  If the original arrange-
ment can be regarded as exceeding the powers of Thomas
Palmer as partner, and therefore not presumptively within
the knowledge of his co-partners, the subsequent receipt
of the consideration money for the lot sold would stand
upon a different footing, and must be held to bring home
to all a knowledge of the original transaction.   Had it
been repudiated at that time, an adjustment might have
been made, which would have prevented a re-sale of the
lot, and no one would have been put in a position to
be damnified by a claim after other rights had intervened.
But Friend Palmer, having neglected to repudiate the
arrangement at the time a purchaser has been induced,
by his silence, to buy on the supposition that he was
acquiring a good title, and the lot has been largely in-
creased in value since by the improvements which he or
those deriving title from him have made upon it.   To
hold the heirs of Friend Palmer estopped from asserting
their legal title at this time, it does not become neces-
sary to apply the maxim that "where one of two inno-
cent persons must suffer, he shall suffer who, by his own
acts, occasioned the loss," for Friend Palmer's heirs suffer
no loss, and the equitable estoppel only prevents loss to
the other party.

We are, therefore, of opinion that the complainants in

MORAN v. PALMER.

the cross-bill are not entitled to the relief prayed by them; and that they have no equitable rights to the lot in controversy. Having come to that conclusion, it is a subject of regret that the record in the original suit is not such that we can put an end to the litigation by a decree in that suit such as we have found the complainant entitled to upon the facts. But as the whole case has been fully presented, on an issue which allowed the parties to exhibit, in proof, all their equities, and as we have already passed upon the questions involved in disposing of the cross suit, we shall not dismiss the original bill, but remand the case with leave to complainant to amend without prejudice to the testimony taken. The defendant will be at liberty to answer the amended bill, and both parties to take additional testimony, if an issue of fact is formed. The decree of the Court below is reversed, and the cross-bill dismissed. Neither party will recover costs against the other on the cross-bill or on this appeal.

In our examination we have left entirely out of view some questions discussed on the argument, but which, in the view we take of it, would not affect the case between the parties; and we have not found it necessary to consider how far the defendants in the original suit might be affected by the improvements made upon the premises had the complainant's title to relief rested upon those alone.

CHRISTIANCY and MARTIN J.J. concurred.

CAMPBELL J. did not sit in this case, having been of counsel.