BRIDGET CONNERTON, EXECUTRIX, v. WILLIAM MILLAR, ROBERT MILLAR AND ELIZA OAKMAN.

*Enforcement of prior mortgage—Avoidance of special defense.*

An execution levy does not prevent the enforcement of a prior mortgage.

Evidence of a case not made by the bill will not support a claim for relief in equity; proofs must be confined to the issue.

Avoidance of a special defense is pleaded by introducing the defense in the bill in the form of pretense and adding matter of reply in the shape of a charge. And if the bill is not so framed originally, a particular defense set up by the answer is met by amending the bill.

A complainant in foreclosure who seeks to show that certain defendants were estopped from obtaining and asserting title under a prior mortgage, should introduce the estoppel by an amendment to his bill.

Foreclosure of a mortgage is not barred by the existence of another mortgage as prior security.

Appeal from the Superior Court of Detroit.    Submitted July 2.    Decided October 14.

FORECLOSURE.    Complainant appeals.

*Brennan & Donnelly* for complainant.

*George H. Prentiss* for defendants William and Robert Millar.

GRAVES, J.    This cause was brought several years

ago by Cornelius Connerton, testator of Bridget Connerton, against these defendants and John Oakman, testator of Eliza Oakman, to foreclose a mortgage given by the Oakmans to Connerton for $300. All the defendants answered, but Connerton and Oakman died before the case was ready for hearing. The court below dismissed the bill and Mrs. Connerton appealed.

A pretty full reference to the facts as well as to the pleadings and the record submitted to us by the appellant, is called for. In May, 1865, Oakman mortgaged the premises, a Detroit city lot, to Mary Hanna for $1,000. In September, 1868, he mortgaged the place to Connerton for $300, payable in three months with interest at ten per cent. November 26th, 1870, he deeded the east half of the lot to the· Millars. The deed recited a consideration of $1,500 and stated that the premises were granted "subject, however, to the payment of two mortgages on the. whole of said lot executed by the parties of the first part, one to Mary Hanna for the payment of $1,000, and. the other to Cornelius Connerton for the payment of $300, and for the payment of which mortgages the parcel of land above conveyed is first to be charged and made liable, and constitutes a fund therefor and for the interest of the same,"—and at the end of the covenants there was added—"except said mortgages, which the parties of the second part hereby assume and agree to pay, *provided* the parcels of land above conveyed are free from all other liens, mortgages and incumbrances, and *provided* also that the title hereby conveyed shall be and continue a valid title to the parties of the second part against all claims and rights originating from or under the· parties of the second part."

As the expression "second part" in the last line is obviously a mistake, it is probable the intention was either to write "first part" instead, or to insert the word "not" between the words "rights" and "originating." The precise language intended, however, is not now material.

41 MICH.—77.

In the fore part of the same month and about three weeks earlier, one Skeel recovered judgment against Oakman for nearly six hundred dollars in the court of the United States at the city of Detroit, and execution having been sued out, the lot was levied on pursuant thereto five days prior to the deed, and some months later was sold under the levy. But the Millars becoming aware of the levy within a day or two after receiving the deed, immediately requested Oakman to cancel the transaction with them, and they offered to re-deed to him. He refused the offer, however, and would not consent to rescind.

In August, 1870, notice of foreclosure of the Hanna or first mortgage under the statute was commenced, and on the 9th of December following a sale was made to the mortgagee, and in December, 1871, she conveyed to the Millars. They also acquired the interest under the execution sale.

The bill states the conveyance of the east half of the lot from the Oakmans to the Millars, and sets forth a copy of the deed. But with this exception it is the ordinary bill for foreclosure and sale in which the Millars are introduced as defendants, claiming "no right in opposition" to complainant's mortgage. Eq. Rule 91.

The object of setting forth the deed is not explained, and in view of the bill no purpose can be conjectured unless it was to show that part of the premises had been conveyed and should be first sold in case of foreclosure. No personal claim is made against the Millars and no estoppel is pleaded to their right to acquire the title based on the Hanna mortgage and assert it in bar of the lien of the mortgage in suit.

Neither is any ground alleged in the bill to bring in question any claim of theirs founded on the first mortgage or any charge or statement to authorize objection to the foreclosure proceedings or admit controversy in regard to them.

The answer of the Oakmans first sets up that the

object of their deed to the Millars was to provide for paying the mortgage, and that there was no consideration except the agreement to assume and pay the two mortgages mentioned, and that Connerton knew of the arrangement and consented to look to the Millars for his pay; and it then claims that in case of a decree for sale it shall order the half of the lot so deeded to be first sold.

In their answer the Millars admit the mortgage in suit and also Oakman's deed, but say that although a deed in form it was given only to secure payment of a debt owing them by Oakman. They allege further that Oakman represented that the mortgages were the only lien or charge on the lot and so stated in the deed, and that they were induced to accept it by such representations exclusively; that in fact the lot was then under the marshal's levy in Skeel's favor and the representations false and fraudulent; that they immediately requested Oakman to rescind and informed him they would have no further concern with their conditional undertaking on account of such fraud and the breach of the condition, and offered to re-deed to him and he refused. They further state and aver that they were not bound by the stipulation and were entitled to wholly disregard it; that the Hanna mortgage was duly foreclosed at law and the whole lot sold to her under such proceeding December 9th, 1870; that her title in virtue thereof became complete and perfect and was thereupon by her conveyed to them December 30th, 1871, and that the mortgage in suit was cut off by such proceedings and the neglect of Connerton to redeem.

This answer seems to attach much importance to the final acquisition of the execution title, but it is not perceived that the fact is very material on this record. True the levy was a few days earlier than the deed from the Oakmans, but it was subsequent to both mortgages and could not be an obstacle to the right of Connerton to enforce his mortgage.

There are one or two other matters referred to in this answer, but they are not material. After this detail it is scarcely needful to consume much more time in disposing of the case.

*First.* By the stipulation in the deed the Millars were to stand bound to pay the mortgages only in case there was then no other charge on the land, and it is proved and substantially conceded that another charge did then exist, namely, the marshal's levy for nearly six hundred dollars. It is also proved that they immediately repudiated the arrangement and notified Oakman. They offered to re-deed and he refused.

They contend that thenceforth they were under no duty legal or equitable to regulate their action respecting either of the mortgages by any thing in the stipulation. That arrangement they insist fell to the ground pursuant to its own terms and spirit and in consequence of the falsity of the representation, and that they were completely at liberty to bargain as they thought proper, for a title under the first mortgage.

Whilst the answer justifies and the proofs sustain this ground of defense, the bill contains nothing to meet and avoid it. The general replication put the answer at issue, but of course introduced nothing to meet and avoid the new matter of defense set up. The court has several times explained this subject and made reference to the rule that the evidence must be confined to the issue and that no relief can be given on evidence of a case not made by the bill. Among other cases see *Moran v. Palmer*, 13 Mich., 367; *Wright v. Dudley*, 8 Mich., 115; *Le Baron v. Shepherd*, 21 Mich., 263. If the Millars were supposed to be estopped from gaining and asserting title under the first mortgage, the estoppel and the matter material to it should have been introduced by amendment of the bill. *Moran v. Palmer*, supra.

The practice of replying specially having ceased, the

usual way of meeting a special defense by the method of avoidance is to introduce the defense in the form of pretense in the bill and then follow it by matter of reply in the shape of charge. And when the bill is not so framed originally as to afford the proper reply to a particular defense brought forward by the answer, the course is to amend it so that it will do so. Adams' Eq., 303, 304; *Foley v. Hill*, 1 Phil., 399, 406, 407; *James v. M'-Kernon*, 6 Johns., 543; *Stafford v. Brown*, 4 Paige, 88; *Van Riper v. Claxton*, 1 Stockton, 302. By such means the case is shaped by the bill in such form as to present a basis for adjudication, and an issue is made up to admit proofs and lead to a decree.

On this part of the case the court is of opinion, in the first place, that the deed from Oakman, for the reasons already given, ceased to bind the Millars, if it ever did, from the time of their discovery of the marshal's levy and their offer to re-deed: and in the next place that no case is made by the bill to authorize the complainant to claim that the Oakman deed estopped the Millars from contending that the lien of complainant's mortgage was cut off by the foreclosure of the prior mortgage given to Hanna.

*Second.* The record for the court submitted by appellant does not contain the Hanna mortgage, the sheriff's deed thereunder to the mortgagee, her deed to the Millars, or any of the proceedings to foreclose that mortgage except the published notice of sale.

As already noticed, the facts however appear to be that the mortgage was foreclosed by proceedings commenced in August, 1870, and terminated by a sale to the mortgagee the 9th of December following, and that she conveyed to the Millars in December, 1871.

Notwithstanding the failure of appellant to show the papers and proceedings to the court, she still objects, through the brief of her counsel, that the Hanna mortgage had five years to run unless there was default for

the space of thirty days in paying interest, and that it is not shown that there was any default, or if there was, that the mortgagee notified his election to the mortgagor to consider the whole sum due.

As the mortgage is not before us, we cannot say whether or not it contained the provision mentioned. Neither can we say that any part was not due. The objection is not supported by the record shown us by the objecting party, and it is not expedient to discuss it. Upon the case presented the question is an abstraction.

In regard to the validity of the foreclosure of that mortgage it is proper to observe that the question is not whether the Millars obtained a superior title or interest, but it is whether the lien of the Connerton mortgage, and hence the right of foreclosure, was cut off by such foreclosure of the prior mortgage. Because if it was not, then the Connerton mortgage was still a cause of action for foreclosure.

The existence of the other as a mere prior security would not hinder.

There is some evidence the court cannot disregard that the Hanna mortgage was indeed due and regularly foreclosed, and none to the contrary. The proceedings were taken and carried through as in case of a matured mortgage, and there is no intimation of any contemporaneous claim or pretense that the fact was otherwise. All parties seem to have acquiesced down to the time the mortgage was produced in this case, a period of more than six years, and then complainant's counsel after disclaiming objection, merely observed, according to a statement contained in the record, that the foreclosure proceeding appeared to have been taken five years before the mortgage became due, and that there was a clause providing for foreclosure in case interest was not paid, and that it was requisite that some notice should be given to the parties before taking action, and that it did not appear that such notice was ever served.

No notice appears to have been taken of this remark of counsel, and no one will attribute any force to it as evidence of the facts it suggested. The essence of it was that according to the opinion of counsel a notice was essential to render the whole amount due and that service of no such notice had as yet been proved. It implicitly assumed that nothing more was needed than the evidence of service of such notice, and therefore that in fact a payment had been in default for thirty days.

The pleadings nowhere impugn the statutory foreclosure and no fraud is imputed. The mortgagors have never complained of any irregularity. And there is no pretense of any defect unless it is found in the foregoing claim in regard to the service of notice that the whole sum was considered due. It is substantially conceded that a payment had fallen due and in consequence of which a right of foreclosure had arisen when the proceedings were commenced.

Upon all the circumstances a presumption of fact is justified as between these parties that the power in the mortgage was lawfully executed. Note 298 by Cowen & Hill.

The decree should be affirmed with costs.

The other Justices concurred.